KENNADAY LEAVITT OWENSBY PC
CURTIS S. LEAVITT (SBN 162032)
cleavitt@kennadayleavitt.com
621 Capitol Mall, Suite 2500
Sacramento, California 95814
Telephone:    (916) 732-3060

Attorneys for Defendants
MONTEREY PENINSULA
HORTICULTURE, INC. dba ROCKET FARMS;
MONTEREY PENINSULA HORTICULTURE, INC. / STEVEN ROBERTS ORIGINAL DESSERTS, LLC;
EMPLOYEE BENEFIT PLAN

UNITED STATE DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| SALINAS VALLEY MEMORIAL HEALTHCARE SYSTEM,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MONTEREY PENINSULA HORTICULTURE, INC. dba ROCKET FARMS; MONTEREY PENINSULA HORTICULTURE, INC. / STEVEN ROBERTS ORIGINAL DESSERTS, LLC, EMPLOYEE BENEFIT PLAN,<br><br>　　　　　　Defendants. | Case No. 5:17-cv-07076-VKD<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT (Fed. R. Civ. P. 12(b)(6))**<br><br>Date: July 31, 2018<br>Time: 10:00 a.m.<br>Courtroom: 2<br>Judge: Hon. Virginia K. DeMarchi<br><br>Complaint Filed: December 13, 2017<br>First Amended Complaint Filed: June 14, 2018<br>Trial Date: None set. |

00130254.1

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (FRCP 12(B)(6))

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ..................................................................................................... ii

I.   INTRODUCTION ............................................................................................................ 1

II.  ARGUMENT .................................................................................................................... 1

    A.  The Court May Rule on All of Defendants' Arguments Raised in Their Motion to Dismiss ................................................................................................................... 1

    B.  Salinas' First Cause of Action for Plan Benefits under ERISA Must Be Dismissed ..... 3

        1.  The Allowable Charge (and Its Lessor of Four Methodologies) Established That One Option for Payment is Up To 150% of Medicare ............................................... 3

        2.  The Plan's Provision for Application of California Law as the Allowable Charge Is Not Superseded in California ................................................................................. 4

        3.  The Allowable Charge is Limited by the Claims Review and Validation Program and Permitted Payment Levels ................................................................................... 5

        4.  Salinas Lacks Standing to Challenge ERISA Disclosure Requirements ........... 6

    C.  Salinas Lacks Standing to Enforce the Plan's and ACA's MOOP Limitations and Cannot Recover Excess Plan Benefits under the Assignment of Benefits ................................. 7

    D.  Salinas' Claim for ACA's MOOP via ERISA Must Be Dismissed Because Salinas' Balance Bills Do Not Count Toward Satisfying the ACA's MOOP Limitation ............ 9

    E.  Salinas' Claims for Intentional and Negligent Misrepresentation Alleged No Misconduct by MPH ................................................................................................ 10

    F.  The Plan's One-Year Limitations Period is Enforceable ............................................ 11

III. CONCLUSION ............................................................................................................... 12

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

# TABLE OF AUTHORITIES

Page No.

**Supreme Court Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .................................................................................. 9

*Heimshoff v. Hartford Life & Acc. Ins. & Co.*, 571 U.S. 99, 609-610 (2013) ............................... 11

**Federal Cases**

*Abarca v. Franklin County Water Dist.*, 2009 WL 1393508, at *2 (E.D. Cal. May 8, 2009) ........... 2

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 2011 WL 2690437, at *2, fn. 1 (N.D. Cal., July 8, 2011 ............................................................................................................................................. 2

*Armstrong v. Hartford Life & Accident Ins. Co.*, 63 F.Supp.3d 1191, 1199 (E.D. Cal. 2014) ........ 12

*Children's Hosp. Cent. California v. Blue Cross of California* 226 Cal.App.4th 1260, 1276 (2014) ................................................................................................................................................ 5

*DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.*, 852 F.3d 868 (9th Cir. 2017) ... 7, 8

*East Coast Test Prep LLC v. Allnurses.com, Inc.*, 2016 WL 5109137 (D. Minn. Sept. 19, 2016) .... 1

*Freeman v. Am. Airlines, Inc. Long Term Disability Plan*, 2014 WL 690207 at *4-5 (C.D. Cal. Feb. 20, 2014) ........................................................................................................................................ 12

*Gould v. Workers' Comp Appeals Board*, 4 Cal.App.4th 1059, 1071 (1992) ................................... 5

*Kilopass Technology Inc. v. Sidense Corp.*, 2010 WL 5141843, at *3 (N.D. Cal. Dec. 13, 2010 ..... 2

*National. City Bank, N.A. v. Prime Lending, Inc.*, 2010 WL 2854247, at *2 (E.D. Wash. July 19, 2010) .................................................................................................................................................. 2

*Regional Medical Center of San Jose v. WH Administrators, Inc.*, 2017 WL 6513441, at *4 (N.D. Cal. Dec. 20, 2017) .................................................................................................................... 6, 7, 8

*Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997) .............. 5

*Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 907-08 (9th Cir. 2008) .......... 12

**Statutes**

28 C.C.R. § 1300.71 ......................................................................................................................... 5

29 C.F.R. § 2590.717-2719A(b)(3)(i) ............................................................................................. 9

42 U.S.C. § 18022(c)(3) ............................................................................................................ 9, 10

29 U.S.C. § 1022 ............................................................................................................................ 7

29 U.S.C. § 1132(a)(1)(B) ............................................................................................................. 8

**I. INTRODUCTION**

Salinas Valley Hospital's ("Salinas") Opposition to Defendants' Motion to Dismiss confirms that dismissal is proper. First, Salinas does not contest that the assignment of benefits is limited to benefits payable under the Plan. As such, the first two causes of action—both of which attempt to seek payments exceeding that which are payable under the Plan—must be dismissed because the patient never assigned to Salinas any rights beyond the right to seek Plan benefits.

Second, contrary to Salinas' argument in its Opposition, the SPD is very clear in that it pays non-contracted hospitals the reasonable and customary rate up to 150% of Medicare. Amounts above 150% of Medicare are not covered under the Plan and are, therefore, non-covered benefits. Non-covered benefits are the financial responsibility of the patient. Additionally, a healthcare provider's charges that are not covered under a health insurance policy or plan do not count toward the MOOP. Here, the Plan benefit pays non-contracted hospitals a maximum of 150% of Medicare. Hospital charges in excess of 150% of Medicare are not covered under the Plan and are not Plan benefits subject to the Plan's and ACA's MOOP. Finally, both the intentional and negligent misrepresentation claims alleged no misconduct against Defendant Monterey Peninsula Horticulture. As explained in detail below, each of the Opposition's legal and factual arguments are flawed. Dismissal is proper.

**II. ARGUMENT**

**A. The Court May Rule on All of Defendants' Arguments Raised in their Motion to Dismiss.**

The Court may properly consider all of Defendants' arguments raised in their Rule 12(b)(6) motion to dismiss for failure to state a claim. "Rule 12(g)(2) and Rule 12(h) are not bastions of clarity and the two rules can easily be confused …" (*East Coast Test Prep LLC v. Allnurses.com, Inc.*, 2016 WL 5109137, at *2 (D. Minn. Sept. 19, 2016)). "Rule 12(g)(2) bans all successive Rule 12 motions raising previously available defenses unless the successive motions fit into one of the two categories [] – certain motions for judgment on the pleadings, and motions to dismiss based on subject matter jurisdiction. Rule 12(h)(1) states that a party waives a number of defenses if those defenses are not raised in an earlier Rule 12 motion, but the rule specifically excepts the failure-to-state-a-clam defense (along with a few others). Together these two rules indicate that a party who files a Rule 12 motion

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

without raising a failure-to-state-a-claim defense gives up their opportunity to raise that defense prior to the closing of the pleadings …" (*Id.*) Here, Rule 12(g)(2) and Rule 12(h) are inapplicable. First, Rule 12(g)(2) "applies to situations in which a party files successive motions under Rule 12 'for the sole purpose of delay…'" (*Kilopass Technology Inc. v. Sidense Corp.*, 2010 WL 5141843, at *3 (N.D. Cal. Dec. 13, 2010) (citing *Abarca v. Franklin County Water Dist.*, 2009 WL 1393508, at *2 (E.D. Cal. May 8, 2009). Defendants' did not file the second motion to dismiss in order to delay proceedings or for any other improper motive. Second, the motion to dismiss challenges the FAC under Rule 12(b)(6) for failure to state a claim. Rule 12(h) specifically excludes Rule 12(b)(6) motions. Third, the instant motion results in nether prejudice nor surprise. Salinas chose to brief the substantive issues for the Court's consideration. Fourth, the Court's Order provided Salinas the option to amend its complaint. [ECF No. 29, page 28]. Salinas elected to file its FAC and pled allegations that did not satisfy or did not comply with the Court explicit rulings and instructions in the Order. Defendants filed the second motion to dismiss to challenge the sufficiency of the allegations contained in the FAC.

Finally, *assuming arguendo*, that Rule 12's formalities may prohibit successive motions to dismiss, Courts may exercise discretion to consider new arguments in the interest of judicial economy. (*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 2011 WL 2690437, at *2, fn. 1 (N.D. Cal., July 8, 2011) (citing *Nat. City Bank, N.A. v. Prime Lending, Inc.*, 2010 WL 2854247, at *2 (E.D. Wash. July 19, 2010)). In *National City Bank*, the court reasoned as follows:

> Judicial economy favors ignoring the motions' technical deficiencies. Rule 12(g) merely prohibits them from raising it before filing an answer because they did not raise it in their initial response under Rule 12(b). Plaintiffs do not dispute that Defendants would simply be able to renew their motion as a Rule 12(c) motion for judgment on the pleadings after filing an answer. The Court declines to pass on this opportunity to narrow the issues because Defendants are entitled to raise these defenses even if they already filed a motion to dismiss. Nor do the motions result in prejudice or surprise. The Court finds good cause to consider them now.

(*Nat. City Bank*, 2010 WL 2854247, at *2).

Here, judicial economy favors an exercise of discretion to consider Defendants' motion

1 because the motion to dismiss seeks to narrow the claims and issues in dispute. A ruling now would
2 focus the parties' discovery and remove the possibility of future motions. Thus, the Court may and
3 should rule on Defendants' arguments at this time in order "to secure the just, speedy, and inexpensive
4 determination of this case. (FRCP Rule 1).

**B. Salinas' First Cause of Action for Plan Benefits Under ERISA Must Be Dismissed.**

    1.  <u>The Allowable Charge (and Its Lessor of Four Methodologies) Established That One Option for Payment is Up To 150% of Medicare.</u>

"Allowable charges means the charge for a treatment, service, or supply that is the lesser of …." (2016 Silver SPD, RFJN, Exhibit A, page 35). "Covered Charges are the Allowable Charges that are incurred for" a list of services and items that include "Hospital Care" and which "are subject to the benefit limits, exclusions, and other provisions in the Plan." (2016 Silver SPD, RFJN, Exhibit A, page 23). Thus, the term "covered charges" encompasses and includes allowed charges (and its lesser of four options, only one of which is "the reasonable and customary charge for the same treatment, service, or supply furnished in the same geographic area.") and is the guiding term throughout the Plan's SPD.[1]

The "Invalid Charges (Refer to the Claims Review and Validation Program section)" exception for "Covered Charges" under the Schedule of Benefits applies. As stated in the Claims Review and Validation Program section of the SPD:

> Invalid Charges means … (b) charges for **fees** or services determined not to have been Medically Necessary, **Usual, Customary and Reasonable**.

(2016 Silver Plan, RFJN, Exhibit A, page 53 [Emphasis added]). In turn, the SPD defines "Usual, Customary and Reasonable Fees" in relevant part:

> [A]n amount that would constitute fair and reasonable payment to a *provider* for *covered services … Usual, customary and reasonable fees* may be lower than ***permitted payment levels*** but, absent specific findings by the Plan Administrator or Claims Delegate to the contrary, charges shall not constitute *usual and customary and reasonable fees* to **the extent they exceed permitted payment levels**."

---

[1] The Opposition argues that an ordinary participant would learn that Plan pays at the allowable charge. (Opposition, ECF No. 37, 8:15-16). Salinas is wrong. Furthermore, Salinas' beliefs are irrelevant as it is not a Plan beneficiary.

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

(2016 Silver Plan, RFJN, Exhibit A, page 54-55 [Emphasis added]). Finally, the permitted payment level is defined on the next page and states in relevant part:

> "*Permitted payment level*" means the charges for services and supplies listed and included as *covered expenses* under the *Plan* … but only to the extent that the fees charged therefore are within all applicable limiting and restrictions established by the Plan including … the following levels…
> (a) Hospitals & Affiliated Facilities.
> (i) <u>Inpatient Services</u>. The *permitted payment level* for *inpatient covered services* shall be based upon 150% of the Medicare allowed amount for the covered services …
> (ii) <u>Outpatient Services</u>. The *permitted payment level* for *outpatient covered services* shall be based upon 150% of the Medicare allowed amount for the covered services …

(2016 Silver SPD, RFJN, Exhibit A, page 55-56 [Emphasis added]). Taken together, the maximum benefit paid under the Plan for hospital services is 150% of Medicare. If the providers' usual, customary and reasonable fees are less than 150% of Medicare, then that amount will be the payable benefit because that amount does not exceed the permitted payment level. If the providers' usual, customary and reasonable fees exceed 150% of Medicare, then the benefits paid under the Plan are capped at 150% of Medicare. Thus, Salinas' claim for ERISA must be dismissed as one of the options for payment includes the option to pay a maximum of 150% of Medicare, which Salinas admits was paid. (FAC, ECF No. 32, ¶ 39).

Finally, the Opposition identifies, but fails to substantively address, that the Plan Administrator or its designee has the ***ultimate discretionary authority*** to determine an Allowable Charge." (Opposition, ECF No. 37, 12:23-13-:2; *see* RFJN, Exh. "A," p. 35; emphasis in original.)

### 2. <u>The Plan's Provision for Application of California Law as the Allowable Charge Is Not Superseded in California.</u>

The Plan is clear that the "Allowable Charge shall mean the amount established by applicable law for that Covered Charge" when "applicable law dictate that maximum amount that can be **billed** by the rendering provider." (2016 Silver SPD, RFJN, Exhibit A, page 23). California has no laws dictating how much a provider can **bill**; California *only* has laws dictating the maximum amount to

be **paid.** *(See, Children's Hosp. Cent. California v. Blue Cross of California* 226 Cal.App.4th 1260, 1276 (2014) ("Therefore, the trial court erred in ruling that section 1300.71(a)(3)(B) provided the exclusive standard for determining the reasonable value of the poststabilization services. The DMHC neither intended nor had the power to dictate **payment rates** or change California law on quantum meruit. Rather, as the DMHC explained, in adopting California Code of Regulations, title 28, section 1300.71 it was setting the **minimum claims payment** and dispute resolution standards to ensure compliance with the Knox-Keene Act's time requirements for claims reimbursement." [Emphasis added]); *and Gould v. Workers' Comp Appeals Board*, 4 Cal.App.4th 1059, 1071 (1992) ("Because the WCAB applied an incorrect burden of proof in deciding whether Dr. Gould was entitled to **payment of fees** in excess of the schedule, the Allebe and Mayo cases must be remanded for a determination of whether Dr. Gould's fees for the psychotherapy sessions were reasonable." [Emphasis added]); *see also* 28 Cal. Code Regs. § 1300.71(a)(3)(B) ("**Reimbursement** of a claim" means: …")). Neither case nor any statute places a limit on what can be "**billed**" by the rendering provider." The Opposition admits *Children's Hosp. Cent. California* and *Gould* addresses what is paid. (Opposition, ECF No. 37,12:11-12 ("*Gould* and *Children's Hospital* are similarly concerned with the portion of a hospital's bill for emergency services that should be **paid**." [Emphasis added])). The FAC's and Opposition's reliance on the Plan's provision is misplaced; there is no California law dictating the maximum amount that a provider can bill.

      The Opposition attempts to defeat this argument my equating "bill" to "charge" and arguing that charges refer to the portion of the bill that is paid. (Opposition, ECF No. 37, 11:6-8). The Opposition's attenuated link fails because the amount billed does not mean the amount paid. Simply put, a bill is a bill and what is paid is the amount paid. Had the Plan meant to use the term paid instead of bill, it would have done so. (*Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997) ("[T]erms in an ERISA plan should be interpreted 'in an ordinary and popular sense as would a [person] of average intelligence and experience.'" [Citations omitted])).

      3. <u>The Allowable Charge Is Limited by the Claims Review and Validation Program and Permitted Payment Levels.</u>

      The Plan's claims review and validation program and permitted payment levels are limits on

the allowable charges that are paid (i.e. covered charges). Two steps are required to reach this conclusion. First, "Covered Charges are the Allowable Charges that are incurred for" a list of services and items that include "Hospital Care" and which "are subject to the benefit limits, exclusions, and other provisions in the Plan." (2016 Silver SPD, RFJN, Exhibit A, page 23). Second, the SPD's states in relevant part:

> … Hospital and Facility charges will be evaluated under the Claim Review Program, and Covered Charges will be determined upon the "Permitted Payment Levels."

(*Id.*). Stated together, the covered charges (i.e. charges paid) are allowable charges subject to the Plan's limits, exclusions and other provisions. Those limits, exclusions and other provisions include the Plan's claims review and validation program and permitted payment levels. Thus, the allowable charges (and its lesser of four options including the 'reasonable and customary' charge) are subject to the Plan's claims review and validation program and permitted payment levels.

The SPD states that "[f]or claim determinations made in accordance with the Claim Review and Validation Program, the Usual and Customary fee will be the Permitted Payment Level." (2016 Silver SPD, RFJN, Exhibit A, page 54). The permitted payment level for both inpatient and outpatient services is the fees that fall within 150% of Medicare. (2016 Silver SPD, RFJN, Exhibit A, page 55). Thus, the Plan provides that Hospital charges are reimbursed at up to 150% of Medicare.

### 4. Salinas Lacks Standing to Challenge ERISA Disclosure Requirements.

The Court's Order instructed Salinas that it must prove standing to enforce ERISA disclosure requirements as it relates to the SPD's: (1) Claims Review and Validation Program provisions; (2) Permitted Payment Levels; and (3) Plan's MOOP limitations provisions. The Court's Order instructed Salinas to provide "better authority" as it found "no basis to broadly construe *Spinedex* as generally conferring standing upon providers, like the Hospital to enforce disclosure requirements in derivative suits for payment of benefits." (Court's Order, ECF No. 29, 12:28-13:4). The Opposition cites to no "better authority." Why? Because providers like Salinas cannot challenge ERISA disclosure requirements. (*See, Regional Medical Center of San Jose v. WH Administrators, Inc.*, 2017 WL 6513441, at *4 (N.D. Cal. Dec. 20, 2017). In *Regional Medical Center of San Jose*, a provider (also represented by Salinas' counsel) challenged an SPD's anti-assignment provision as violating ERISA

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

disclosure requirements, arguing the provision violates ERISA's proximity rules (29 U.S.C. § 1022). The *Regional Medical Center of San Jose* Court found that providers cannot challenge ERISA disclosure requirements because "that rule [29 U.S.C. § 1022], however, applies to plan beneficiaries; it does not apply to service providers who file derivative lawsuits based on assignments from plan beneficiaries. [Citations omitted]" (*Regional Medical Center of San Jose v. WH Administrators, Inc.*, 2017 WL 6513441, at *4). This is important because if Salinas cannot assert violations of the disclosure requirements, then Salinas is bound by the SPD's provisions regarding Claims Review and Validation Program, Permitted Payment Levels, and the Plan's MOOP limitation provisions.

Like the provider in *Regional Medical Center of San Jose*, the Opposition makes clear that Salinas seeks to enforce ERISA disclosure requirements also under 29 U.S.C. section 1022 (Opposition, ECF No. 37, 15:26-16:16). Moreover, the Opposition implicitly recognizes that *only* Plan beneficiaries may bring ERISA disclosure challenges as it "is determined from the point of view of a 'reasonable plan participant.'" (Opposition, ECF No. 37, 16:17-18). Additionally, the Opposition attempts to distinguish *DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.*, 852 F.3d 868 (9th Cir. 2017) on the basis that suit was not to recover benefits under the ERISA plan. The Opposition fails to grasp that the issue turns on the assignment of benefits. (*DB Healthcare, LLC*, 852 F.3d at 868 ("[P]atients intended to assign to [the provider] *only* their right to bring suit for payment of benefits …. the claims [] do not fall within the scope of the assignment.")). Here, the FAC pled no allegations that the assignment of benefits provided any right to enforce ERISA disclosure requirements; rather, the FAC pleads that the assignment of benefits allows "**payment** that is due … under the Plan. [Emphasis added]" (FAC, ECF No. 32, ¶ 228). Therefore, Salinas' claims based on the assumption that the provisions were inadequately disclosed in the SPD should be dismissed.

### C. Salinas Lacks Standing to Enforce the Plan's and ACA's MOOP Limitations and Cannot Recover Excess Plan Benefits under the Assignment of Benefits.

Defendants are not required to pay any amount in excess of the Plan's benefits. The Plan's benefits are the reasonable and customary amount up to 150% of Medicare. Thus, as an assignee of Plan benefits, Salinas is entitled to the Plan's benefits – 150% of Medicare. Salinas admits Defendants paid this amount. (FAC, ECF No. 32, ¶ 39). Now, Salinas seeks amounts in excess of the Plan benefits

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

00130254.1                                                -7-
REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (FRCP 12(B)(6))

because Salinas admits it was paid the Plan benefits - 150% of Medicare. The FAC is clear on these points. Under the FAC's claim for violation of the Plan's MOOP, the FAC alleges: "The Plan seeks to enforce the Plan's own MOOP provisions through this cause of action … the Plan was required to pay '100% of the remainder of Covered Charges.'" (FAC, ECF No. 32, ¶ 238).

Similarly, under the FAC's claim for violation of the ACA's MOOP, the FAC alleges: "The Hospital therefore … seeks payment for the entire amount charged by the Hospital that is above the applicable MOOP limit." (FAC, ECF No. 32, ¶ 244). Stated together and alternatively, Salinas seeks payment of its full billed charges minus the Plan beneficiaries' financial responsibility which includes the out-of-pocket maximum. By seeking its billed charges minus the MOOP limitations, Salinas is seeking an amount in excess of the Plan benefit.

Salinas' attempt is improper because Salinas can *only* recover Plan benefits under the assignment of benefits.[2] The FAC alleges that Salinas received assignment of benefits from Plan beneficiaries assigning *only* the right to "payment that is due … **under** the Plan." (FAC, ECF No. 32, ¶ 228; *see DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.*, 852 F.3d 868 (9th Cir. 2017) ("We have held that 'because a health care provider-assignee stands in the shows of the beneficiary, such a provider has standing to sue under § 502(a)(1)(B) to recover benefits due **under** the plan.' [Citation omitted]") [Emphasis added]). The assignment of benefits is limited to payment of benefits available **under** the Plan – 150% of Medicare. Defendants paid this amount to Salinas. Neither the FAC nor the Opposition cite to anything further that allows Salinas to seek amounts in excess of the Plan's benefits.

Similarly, Salinas does not have standing to pursue these amounts under the assignment of benefits because Salinas *only* has authority (i.e. standing) to recover the Plan's benefits – not amounts in excess of the Plan's benefits. Under the assignment of benefits, Salinas is *only* authorized to sue Defendants for payment of Plan benefits – 150% of Medicare. Salinas admits this amount was paid. Thus, Salinas lacks authority (standing) to sue Defendants for any additional sums in excess of 150% of Medicare. (*See*, *Regional Medical Center of San Jose v. WH Administrators, Inc.*, 2017 WL

---

[2] The Court's Order addressed the standing and benefits arguments as a matter of right under law, not under the assignment of benefits lens. (Court's Order, ECF No. 29, 16:10-16)

00130254.1                                -8-
REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (FRCP 12(B)(6))

6513441, at 4, fn. 1 (N.D. Cal. Dec. 20, 2017).

### D. Salinas' Claim for ACA's MOOP via ERISA Must Be Dismissed Because Salinas' Balance Bills Does Not Count Toward Satisfying the ACA's MOOP Limitation.

Salinas' balance bills do not count towards satisfying the ACA's MOOP Limitation. The key issue to determine whether Salinas' balance bills count towards satisfying the ACA's MOOP is whether the cost-sharing exception under 42 U.S.C. section 18022(c)(3) for "non-network providers" applies to Salinas. Here, the exception applies because: (1) the Plan has a network of providers; and (2) the Plan did not engage in reference-based pricing.

First, the Plan maintained a network of hospital providers. The Plan paid the reasonable and customary amount up to 150% of Medicare. The Plan paid this amount to all hospitals that treated Plan beneficiaries – whether the hospital was located in New Work, Iowa or California. A Plan beneficiary was free to go to any and every hospital because the Plan always paid up to 150% of Medicare. Thus, every hospital who treated a Plan beneficiary was 'in-network' because the Plan would pay up to 150% of Medicare to these hospitals. The Plan did not deny payment because a hospital was 'out-of-network.' The FAC and the Opposition cannot argue otherwise and neither allege or argue otherwise. Thus, because the Plan maintained a network of hospital providers, the cost-sharing exception applies and Salinas' balance bills do not count towards the ACA's MOOP.

Correspondingly, because all hospitals were 'in-network' providers under the Plan, any balance bill is the responsibility of the Plan beneficiary who received services at that hospital. The SPD makes this clear. (2016 Silver SPD, RFJN, Exhibit A, page 23 ("Once the Plan has made the applicable benefit payment, the remaining percentage owed is the Covered Person's 'Coinsurance' responsibility.")). This is consistent with federal regulations. (29 C.F.R. § 2590.717-2719A(b)(3)(i)). Thus, hospitals who seek payment in excess of the Plan benefits (up to 150% of Medicare) must seek payment from Plan beneficiary (i.e. patient). Here, Salinas inappropriately seeks payment from Defendants when it should look for payment from the Plan beneficiary.

Second, Salinas' reference pricing allegations fail because the allegations are not plausible. To satisfy plausibility, "[f]actual allegations must be enough to raise a relief above the speculation level." *Only* plausible claims for relief will survive a motion to dismiss. (*Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009)). A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. (*Id.*). A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the defendant-unlawfully-harmed-me accusation." (*Id.*). The Opposition argues that the "Hospital plausibly alleges that Defendants engaged in a 'Reference Based Pricing Review'" and thus the FAC is entitled to all reasonable factual inferences. However, the FAC only makes allegations of reference-based pricing and provided no factual support. Under this standard, if a complaint contains allegations that a man lived on the planet Mars, then the Court must accept that allegation as true. That logic is wrong. Mere allegations are not enough, rather the allegations must be plausible.

The FAC's allegations regarding Defendants engaging in reference-based pricing are not plausible. The FAC alleges that Defendants engaged in reference-based pricing (i.e. when a plan sets a reference price for certain procedures) because the Plan paid 150% of Medicare. (FAC, ECF No. 32, ¶¶ 158, 191-193). The Plan paid a maximum benefit of 150% of Medicare. Under this methodology and the FAC's definition, 150% of Medicare is not reference-based pricing because it is not a set amount paid by the Plan. Rather, the Plan can pay less than 150% of Medicare for covered services. Thus, under the facts, Salinas' allegations that Defendants engaged in reference-based pricing fails to rise to the plausibility level. This is important because if Defendants did not engage in reference-based pricing, then the "non-network providers" exception to cost-sharing in 42 U.S.C. section 18022(c)(3)(B) applies and Salinas' balance bill does not count towards satisfying the MOOP.

### E. Salinas' Claims for Intentional and Negligent Misrepresentation Alleged No Misconduct By MPH.

The motion to dismiss challenges the FAC for failure to state a claim under Rule 12(b)(6) because the FAC does not allege any facts against MPH (as opposed to the Plan). The FAC does not allege any misrepresentation made by MPH; rather, the FAC *only* alleges misrepresentations by the Plan. (*See,* FAC, ECF No. 32, ¶ 248 ("As alleged above, **the Plan**, through its agents, affirmatively represented to the Hospital …**[t]he Plan** also affirmatively represented to the Hospital …")).

The Opposition mistakenly refers to this as a renewed Rule 9(b) challenge. The motion to dismiss does not challenge whether the FAC's allegations were pled with the required particularity

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

1  under Rule 9(b) because the Court's Order determined the allegations were sufficiently pled. Instead, the motion to dismiss seeks to dismiss MPH under Rule 12(b)(6) for failure to state a claim because the FAC does not allege any misconduct against MPH. Absent from the Opposition is any citation to where the FAC alleges misconduct by MPH. Thus, the intentional and negligent misrepresentation claims against MPH must be dismissed.

### F. The Plan's One-Year Limitations Period is Enforceable.

Federal courts are clear – "a participant and a plan may agree by contract to a particular limitations period … as long as the period is reasonable." (*Heimshoff v. Hartford Life & Acc. Ins. & Co.*, 571 U.S. 99, 609-610 (2013)). Salinas, as an assignee for payment of benefits (FAC, ECF No. 32, ¶¶ 227 and 241), "agreed to and shall be bound by the provisions set forth within this [SPD]." (2016 Silver SPD, RFJN, Exhibit A, page 61). Thus, the Plan's one-year limitation for initiating actions for payment of benefits as stated in the SPD controls, and reduces the number of Salinas' claims at issue in this litigation. (*See*, 2016 Silver SPD, RFJN, Exhibit A, page 61). The Opposition raises two arguments. The limitation period does not apply because: (1) the limitation period was not properly disclosed in the SPD; and (2) Defendants failed to disclose the limitation period to Salinas during the administrative process. Both arguments lack merit.

First, the Opposition argues that the limitations period was not properly disclosed in the SPD because the disclosure of the limitations period is similar to the disclosure in *Spinedex Physical Therapy USA Inc.*, 770 F.3d 1282. However, to allege inadequate disclosure under ERISA, Salinas must have standing. Here, Salinas put the cart (allegations of inadequate disclosure) before the horse (standing). The Opposition makes clear that the FAC seeks to enforce ERISA disclosure provisions under *Spinedex*. (Opposition, ECF No. 37, 22:14-20). The Court's Order found "no basis to broadly construe *Spinedex* as generally conferring standing upon providers, like [Salinas], to enforce ERISA disclosure provisions in derivative suits for payment of benefits." (*See*, Order on Motion to Dismiss, ECF No. 29, 12:28-12:4). The Court allowed Salinas leave to amend to provide "better authority," but neither the FAC nor the Opposition cite any new authority that would allow Salinas to enforce ERISA disclosure requirements.

Second, the Opposition argues that the limitations period does not apply because the

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

limitations period was not disclosed to Salinas during the administrative process. To support its argument, the Opposition cites to three out-of-circuit cases. The Opposition can *only* cite to out-of-circuit cases because the Ninth Circuit does not impose a "duty to inform" of time limitations when the limitations period is disclosed in the SPD. (*See*, *Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 907-08 (9th Cir. 2008); *see also, Armstrong v. Hartford Life & Accident Ins. Co.*, 63 F.Supp.3d 1191, 1199 (E.D. Cal. 2014) *and Freeman v. Am. Airlines, Inc. Long Term Disability Plan*, 2014 WL 690207 at *4-5 (C.D. Cal. Feb. 20, 2014)). Thus, the one-year limitations period disclosed in the Plan's SPD narrows Salinas' claims to claims where a final determination was provided after December 12, 2016.

### III.   CONCLUSION

For the above stated reasons, Defendants request that this Motion be granted and Salinas' First Cause of Action and Second Cause of Action be dismissed as to Defendants MPH and the Plan and Salinas' Third Cause of Action and Fourth Cause of Action be dismissed as to Defendant MPH.

DATED: July 19, 2018                                  KENNADAY LEAVITT OWENSBY PC

By: _/s/ Curtis Leavitt_
CURTIS S. LEAVITT
LANCE M. MARTIN
Attorneys for Defendants
MONTEREY PENINSULA
HORTICULTURE, INC. dba ROCKET
FARMS; STEVEN ROBERTS ORIGINAL
DESSERTS, LLC; EMPLOYEE BENEFIT
PLAN

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

00130254.1                                  -12-
REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (FRCP 12(B)(6))