1  KENNADAY LEAVITT OWENSBY PC
2  CURTIS S. LEAVITT (SBN 162032)
   cleavitt@kennadayleavitt.com
   LANCE M. MARTIN (SBN 294457)
3  lmartin@kennadayleavitt.com
   621 Capitol Mall, Suite 2500
4  Sacramento, California 95814
   Telephone:    (916) 732-3060
5
   Attorneys for Defendants
6  MONTEREY PENINSULA
   HORTICULTURE, INC. dba ROCKET
7  FARMS;
   MONTEREY PENINSULA
8  HORTICULTURE, INC. / STEVEN
   ROBERTS ORIGINAL DESSERTS, LLC,
9  EMPLOYEE BENEFIT PLAN

10

11

12

UNITED STATE DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| 13  SALINAS VALLEY MEMORIAL<br>HEALTHCARE SYSTEM,<br>14<br>        Plaintiff,<br>15<br>   v.<br>16<br>MONTEREY PENINSULA<br>17  HORTICULTURE, INC. dba ROCKET<br>FARMS; MONTEREY PENINSULA<br>18  HORTICULTURE, INC. / STEVEN<br>ROBERTS ORIGINAL DESSERTS, LLC,<br>19  EMPLOYEE BENEFIT PLAN,<br>20<br>        Defendants.<br>21<br>22 | Case No. 5:17-cv-07076-VKD<br><br>**MONTEREY PENINSULA<br>HORTICULTURE, INC.'S<br>THIRD-PARTY COMPLAINT**<br><br>Judge: Hon. Mag. Judge Virginia K. DeMarchi<br><br>Complaint Filed: December 13, 2017<br>Trial Date: None set. |

23        Third-Party Plaintiff, MONTEREY PENINSULA HORTICULTURE, INC. ("Monterey"),

24  for itself and as fiduciary of the Monterey Peninsula Horticulture / Steven Roberts Original Desserts,

25  LLC, Employee Benefit Plan (the "Plan" or Self-Funded Plan), files this Third-Party Complaint

26  against Third-Party Defendants, EMPLOYEE BENEFIT MANAGEMENT SERVICES, INC.

27  ("EBMS"), CLAIMS DELEGATE SERVICES, LLC ("CDS"), ADVANCED MEDICAL PRICING

28  SOLUTIONS, INC. ("AMPS"), and ALLIANT INSURANCE SERVICES, INC. ("Alliant")

KENNADAY LEAVITT OWENSBY PC<br>ATTORNEYS AT LAW<br>621 CAPITOL MALL | SUITE 2500<br>SACRAMENTO, CA 95814

(collectively, Third-Party Defendants") for breach of fiduciary duty, breach of written contract and professional negligence.

## JURISDICTION AND VENUE

1.    Jurisdiction is proper in this Court under 28 U.S.C. sections 1331, 1332 and 1367. Federal questions exist under 28 U.S.C. section 1331 because Monterey alleges claims under the following federal statute: the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1). Diversity jurisdiction exists under 28 U.S.C. section 1332 because this case is between citizens of different states and the amount in controversy exceeds $75,000 to each of them. Supplemental jurisdiction exists under 28 U.S.C. section 1367 because Monterey's claims are based on, arise from, and are factually interrelated with Salinas' allegations against Monterey.

2.    This Court has personal jurisdiction over the parties because each Defendant systematically and continuously conducts business in this State, and otherwise has minimum contacts with this State sufficient to establish personal jurisdiction over each of them.

3.    Venue is proper in the San Jose Division of the United States District Court for the Northern District of California under 28 U.S.C. sections 1391(b) and (c), and 29 U.S.C. section 1132(e)(2). This judicial district is the appropriate venue under 28 U.S.C. sections 1391(b) and (c) because this district is where the acts, omissions and events giving rise to Monterey's causes of action occurred, and where EBMS, CDS (now known as AMPS) conduct business. This judicial district is the appropriate venue under 29 U.S.C. section 1132(e)(2) because this district is where the Plan was administered and where the breaches too laces that causes loss and damage to Monterey.

## THE PARTIES

4.    Third-Party Plaintiff Monterey is a California corporation with its principle place of business in Salinas, California. Monterey is in the agricultural business and provides nursery products, including greenhouse growers, indoor potted foliage plants, and edible herbs, fruits and vegetables to its customers. Monterey is the sponsor and plan administer of the Plan. Monterey is a fiduciary of the Plan under ERISA section 3(21)(A)(i) and (iii).

5.    Third-Party Defendant Employee Benefit Management Services, Inc. is a Montana corporation with its principle place of business at 1075 Overland Ave, Billings, MT. EBMS conducts

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL, SUITE 2500
SACRAMENTO, CA 95814

00141025.1                                    -2-

MONTEREY PENINSULA HORTICULTURE, INC.'S THIRD-PARTY COMPLAINT

business in California and is a third-party administrator providing administrative services, including plan design, medical bill review, and claims administrative services, to self-funded plans. EBMS is the claims administrator of the Plan. EBMS drafted and provided Monterey with its plan documents. In addition to its third-party administrative services, EBMS adjusted, reviewed and paid claims under the Plan. Specifically, EBMS determined what healthcare providers would be paid by the Plan, and in what amount. EBMS received compensation from Monterey and/or the Plan for services provided to Monterey and the Plan. EBMS is a fiduciary of the Plan under ERISA section 3(21)(A)(i) and (iii) with regard to the design and terms of the Plan document, with regarding to cost saving mechanism for claims processing, and with regard to the decision to retain AMPS and CDS.

6.     Third-Party Defendant Advanced Medical Pricing Solutions is an Arizona corporation with its principal place of business at 35 Technology Parkway, Suite 100, Peachtree Corners, GA. AMPS conducts business in California, and provides administrative services, including medical bill review and reference based pricing and reimbursement processes, and the determination of what health claims should be paid and in what amount. Monterey contracted with AMPS (through Monterey's contract with CDS) for administrative services, and AMPS provided administrative services, including whether the Plan should be amended to reflect AMPS' medical bill review and reference based pricing and reimbursement processes, setting out-of-network reimbursement rates for healthcare provider claims, negotiation of direct provider contracts, medical bill or claim review, and the determination of what health claims should be paid and in what amount. Thus, AMPS is a fiduciary of the Plan under ERISA section 3(21)(A)(i) and (iii).

7.     Third-Party Defendant CDS is a Florida limited liability company with its principal place of business at 420 Technology Parkway, Norcross, GA. On or around August 1, 2014, CDS became a wholly-owned subsidiary of AMPS. CDS conducts business in California, both on its own and through its parent company AMPS. CDS provides administrative services, including medical bill review and reference based pricing and reimbursement processes, and the determination of what health claims should be paid and in what amount. Monterey contracted with CDS for administrative services, and CDS provided administrative services, including whether the Plan should be amended to reflect CDS' medical bill review and reference based pricing and reimbursement process, setting

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL, SUITE 2500
SACRAMENTO, CA 95814

out-of-network reimbursement rates for healthcare provider claims, negotiation of direct provider contracts, medical bill or claim review, referenced based pricing and referenced based reimbursement of claims, and the determination of what health claims should be paid and in what amount. Thus, AMPS is a fiduciary of the Plan under ERISA section 3(21)(A)(i) and (iii).

8.      Third-Party Defendant Alliant is a Delaware corporation with its principal place of business at 1301 Dove Street, Suite 200, Newport Beach, CA. Alliant conducts business in California, and provides insurance broker and employee benefit plan consulting services to employers. Alliant serves Monterey as insurance broker, employee benefits consultants, and trusted advisors. Alliant counseled and assisted Monterey on the Plan's design, legal compliance aspects, administration, and by procuring stop-loss insurance coverage for the Plan. Alliant received compensation from Monterey and/or the Plan for services provided to Monterey and the Plan. Alliant is a part in interest under ERISA section 3(14)(A) with regard to the Plan.

## FACTUAL ALLEGATIONS

The Plan Provides Healthcare Services for Monterey's Employees and Employees' Dependents.

9.      The Plan was a health benefit plan that was sponsored by Monterey from July 1, 2014 through June 30, 2017. The Plan was self-funded by Monterey through employer and participant contributions.

10.     The Plan is an employee benefit plan within the meaning of ERISA section 3(1), and is subject to Title I of ERISA and its fiduciary standards. The Plan is required to file Form 5500s for each plan year.

11.     Monterey's employees and employees' dependents are participants of the Plan ("Plan participants"). The Plan insures Monterey's employees and employees' dependents against losses arising from their medical care. Monterey's employees and employees' dependents rely upon the Plan's benefits to cover the costs of their healthcare in the same manner as a health insurance policy.

12.     Monterey intended for the Plan to cover health claims of its employees and employees' dependents similar to the health insurance policies Monterey utilized to provide healthcare coverage before July 1, 2014.

///

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL, SUITE 2500
SACRAMENTO, CA 95814

13.     To limit its maximum potential liability, Monterey purchased excess liability insurance (stop-loss) policy for the Plan. Defendants advised Monterey in procuring stop-loss insurance coverage for the plan.

Monterey Creates the Plan at The Recommendation of Alliant, EBMS, AMPS and CDS.

14.     The relationship and transaction between Monterey and the Third-Party Defendants began with the Plan and arose from the trusted relationship of Monterey with insurance agent and benefit consultants, Alliant, in 2014.

15.     In 2014, Monterey was presented by Alliant, itself and on behalf of EBMS, CDS and/or AMPS, with a proposal to change Monterey healthcare insurance coverage for its employees and employees' dependents from a fully insured plan to a self-insured plan.

16.     As part of the switch to a self-insured plan, EBMS, AMPS, CDS, and Alliant presented the self-insured plan as a cost-savings mechanism. As part of the self-funded plan, AMPS, CDS, EBMS, and Alliant also presented a Claim Review and Validation Program and a Reference Based Reimbursement ("RBR") program to Monterey and the Plan. AMPS, CDS, EBMS, and Alliant represented to Monterey and the Plan that their self-funded plan was the type of RBR program that was accepted and would enable Monterey to reduce its costs for providing health insurance to its employees and employees' dependents.

17.     At the time the self-funded plan, the Claim Review and Validation Program, and RBR Program were presented to Monterey, EBMS, AMPS, CDS, and Alliant represented they were knowledgeable in self-funded plans, claim review and validation, and RBR and pricing programs, and Monterey relied upon them and their representations.

18.     Alliant advised Monterey to utilize EBMS, AMPS and CDS' services with respect to the Plan.

19.     Alliant, EBMS, AMPS, and CDS were in a position of trust and confidence with regard to Monterey, often rendered compliance advice to Monterey concerning the Plan, and represented to Monterey that changing to a self-funded plan would help manage costs. Monterey relied upon the advice of Alliant, EBMS, AMPS, and CDS, and amended Monterey's healthcare insurance coverage from a fully-insured plan to a self-funded plan, and implemented the Claim

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

Review and Validation Program and the RBR under the self-funded plan.

20.    In 2014, Monterey established the Plan as a self-funded plan.

Alliant, EBMS, AMPS and CDS Neither Properly Created Nor Properly Administered the Plan.

21.    The operative Plan document, the Summary Plan Description ("SPD"), stated that EBMS was the Claims Administrator for the Plan. The services agreement between Monterey and EBMS listed EBMS' duties and responsibilities as Claim Administrator. As Claim Administrator, EBMS' duties and responsibilities included, but were not limited to, preparing the SPD, processing and adjudicating all claims, reviewing and responding to appeals regarding benefit determinations, facilitating reviews by independent review organizations, and answering medical benefit and claim questions.

22.    The services agreement between Monterey and AMPS and CDS listed AMPS and CDS' duties and responsibilities as third-party administrators. As the third-party administrator, AMPS and CDS' duties and responsibilities included, but were not limited to, implementing and administering the Claim Review and Validation Program and the RBR Program, engaging billing review specialists and medical review specialists, making benefit determinations under the SPD, and handling benefit determination appeals. Additionally, the service agreement mandated that the Plan be amended to include a list of "Required Modifications." These "Required Modifications" change the Plan materially, impacting the Plan's "structure, design, concepts, definitions, terms and provisions" applicable to all benefit claims submitted to the Plan. The result of the "Required Modifications" that AMPS and CDS dictate be made to the Plan was that AMPS and CDS were given total discretion and authority over benefit claims.

23.    The service agreements between Monterey and the Defendants and the SPD purport to be legitimate, but operationally, the agreements were not followed and the Plan operated nothing like the plan presented to Monterey. The services actually perpetrated upon Monterey, the Plan and Monterey's employees and employees' dependents who participated in the Plan was nothing like what Monterey and the Plan contracted to receive for the following reasons:

a.    The SPD prepared and modified by EBMS, AMPS, and CDS violates federal law. Specifically, AMPS' and CDS' Claim Review and Validation Program and RBR

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

00141025.1

-6-

MONTEREY PENINSULA HORTICULTURE, INC.'S THIRD-PARTY COMPLAINT

Program shifted healthcare costs to participants and violated the Affordable Care Act ("ACA") mandates, including the "minimum value" provision to participants from the Plan and rendering the Plan unaffordable. Additionally, the Claims Review and Validation Program and Plan Limitations violate ERISA, including the disclosure rules;

b.   EBMS, AMPS, and CDS did not administer the Plan in accordance with the SPD. EBMS, AMPS, and CDS discounted virtually all substantive medical claims submitted to the Plan by healthcare providers in a similar fashion for claims incurred or presented in the 2014 and 2017 time period. Specifically, EBMS, AMPS, and CDS did not administer the Plan according to the SPD and did not utilize the RBR program;

c.   EBMS, AMPS, and CDS made false communications to healthcare providers regarding the level of plan benefits under assignment of benefits received from Plan participants. EBMS, AMPS, and CDS communicated benefits to healthcare providers that exceeded the actual Plan benefits. Specifically, EBMS, AMPS, and CDS made false representations to healthcare providers that the Plan would cover 70% of the medical bills, up to $21,666, after which, the Plan would cover 100%. EBMS, AMPS, and CDS also made false representations to healthcare providers that the Plan had a maximum out-of-pocket limit of $6,350 for all services without limitation; and

d.   AMPS' and CDS' Claim Review and Validation Program and RBR Program, when applied to the Plan's design, guaranteed Monterey's employees and employees' dependents would be subject to balance billing from healthcare providers.

24.   Operationally, EBMS, CDS, and AMPS act with complete discretion and authority as to the disbursement of Plan assets on all healthcare provider claims. EBMS, CDS and AMPS exercised complete authority and control over Plan assets by determining what payment would be made out of Plan assets, to whom such payments would be made, and in what amount. Monterey approved aggregate funding requests, but did not determine any individual claim or vendor payment amounts.

25.   EBMS, AMPS, and CDS did not disclose to Monterey or the Plan the full nature and

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

scope of EBMS', AMPS', and CDS' business methodologies with regard to services EBMS, AMPS, and CDS rendered to the Plan, although EBMS, AMPS, and CDS had a legal duty to do so. Further, EBMS, AMPS and CDS did not disclose to Plan participants the nature and scope of their liability to healthcare providers, although EBMS had a legal duty to do so.

26.     EBMS, AMPS, and CDS represented to Monterey that the self-funded plan would protect participants against healthcare provider "balance billing." EBMS, AMPS, and CDS failed to disclose to Plan participants the nature, scope, and amount of monetary liability they would owe to healthcare providers as a result of the Claim Review and Validation Program and RBR Program utilized by AMPS and CDS. AMPS and CDS (and other Defendants) also failed to disclosure to Plan participants that virtually all significant claims administered by them would subject participants to monetary liabilities for balances due providers who rendered healthcare services.

27.     The SPD by its term and as administered by EBMS, AMPS, and CDS operationally, deceived Monterey, the Plan and Monterey's employees and employee beneficiaries into believing EBMS, AMPS, and CDS were achieving savings in claims paid by the Plan when no savings were actually realized or could ever possibly be realized.

<u>Healthcare Providers Sue Monterey and the Plan for Plan Benefits.</u>

28.     As a result of both the flawed design of the Plan as stated in the SPD and the improper administration of the Plan by EBMS, AMPS, and CDS, healthcare providers appealed the benefit determinations. These appeals were adjudicated by EBMS at the first level, and AMPS, and CDS at the second level, as stated in the SPD.

29.     After exhausting the first and second appeal levels, healthcare providers sued Monterey and the Plan to recover monies on alleged underpaid services. See *Salinas Valley Memorial Healthcare System v. Monterey Peninsula Horticulture, Inc. d/b/a Rocket Farms, et al.,* Case No. 5:17-cv-7076-VKD, United States District Court, Northern District of California, San Jose Division, and *Long Beach Memorial Medical Center v. Monterey Peninsula Horticulture, Inc.*, *et al.*, Case No. BC711222, Superior Court of the State of California, County of Los Angeles. The healthcare providers' lawsuit alleges, among other allegations, that Monterey and the Plan underpaid the healthcare providers according to the rates established in the SPD and according to representations

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

MONTEREY PENINSULA HORTICULTURE, INC.'S THIRD-PARTY COMPLAINT

made by EBMS, AMPS, and CDS on behalf of Monterey and the Plan.

30.     Defendants' deceitful business practices forced Monterey to expend significant time and resources in identifying, disputing, appealing and negotiating allegedly underpaid claims. Defendants' deceitful self-funded plan and RBR scheme resulted in at least $1.6 million in gross claims contested. Monterey and the Plan have suffered, and continue to suffer, monetary damages in excess of $1.6 million due to the actions and omissions of Defendants.

## FIRST CAUSE OF ACTION

### (Breach of Fiduciary Duty against All Defendants)

Breach of Fiduciary Duty under Section 502(a)(2) against EBMS

31.     All of the factual allegations set forth above in paragraphs 1 through 30 are incorporated by reference as though set forth herein.

32.     "Fiduciary status under ERISA is a functional concept, and if Defendants have acted like a fiduciary, they may have incurred fiduciary obligations." *Walsh v. Principal Life Ins. Co.*, 266 F.R.D. 232, 241 (S.D. IA 2010). In other words, ERISA imposes fiduciary obligations on individuals who are not named as fiduciaries, but nevertheless exercise actual authority over plan assets. Furthermore, the Eighth Circuit has stated that "courts should construe the term fiduciary broadly under ERISA, and in favor of finding that a fiduciary duty exists." *Id.* at 241; *Olson v. E.F. Hutton & Co., Inc.*, 957 F.2d 622, 625 (8th Cir. 1992).

33.     Here, EBMS is a fiduciary because EBMS exercises authority over Plan assets. Although EBMS is not a named fiduciary under the SPD, EBMS is a fiduciary of the Plan within the meaning of ERISA section 3(21)(A)(i) and (iii) because EBMS had authority over Plan assets, exercised discretion regarding the design and terms of the SPD, with regard to cost savings mechanisms for claim processing, and with regard to the decision to retain AMPS and CDS.

34.     A fiduciary has a duty to perform its obligations and responsibilities under the Plan prudently, in the best interest of the participants and beneficiaries, and in accordance with the terms of the Plan document. 29 U.S.C. § 1104(a)(1).

35.     As part of its fiduciary duty, EBMS has the legal duty to provide full, fair and prompt disclosure to Monterey of all facts within its knowledge which were or could have been material to

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

matters within EBMS' relationship with Monterey. The facts show EBMS breached this legal duty. Specific examples are shown by the following actions and/or omissions:

a. Drafting an SPD which violated federal law, including, but not limited to: (1) the ACA mandates, including the "minimum value" provision and rendering the Plan unaffordable, and (2) ERISA, including the disclosure requirements for plan subjects;

b. Drafting an illusory SPD which shifted the risk for losses to Monterey and Monterey's employees and employees' dependents;

c. Failing to act in the best interest of Monterey, the Plan, Monterey's employees, and employees' dependents by causing Monterey and the Plan to engage AMPS and CDS' services, which exposed Monterey and Monterey's employees and employees' dependents to collection activities from providers;

d. Failing to disclose to Monterey, the Plan, and Monterey's employees and employees' dependents the nature and scope of their liability for claims left unpaid by the self-funded plan, the Claim Review and Validation Program, and the RBR Program, and then exposing them to that liability for unpaid claims;

e. Failing to administer the Plan according to the SPD and discounting all medical claims paid;

f. Failing to correctly communicate the Plan's benefits to healthcare providers and making false representations about the Plan's benefits to healthcare providers. For example, EBMS made false representations to Salinas Valley Hospital that the Plan would cover 70% of a patient's medical bills, up to $21,666, after which the Plan would cover 100%; and

g. Or otherwise as alleged above.

36. EBMS further breached its fiduciary duty by misrepresenting to Monterey that the self-funded plan, Claim Review and Validation Program, and RBR Program would result in savings to Monterey and the Plan. These representations were made in order to induce Monterey to create a self-funded plan administered by EBMS and to retain AMPS and CDS to administer the Claim Review and Validation and RBR Programs. These misrepresentations were material because without

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL, SUITE 2500
SACRAMENTO, CA 95814

them, and the trust that Monterey had in Alliant and EBMS, Monterey would not have signed the services agreement with EBMS, AMPS, and CDS. As a result of Monterey reliance on EBMS' misrepresentations, Monterey and the Plan was damaged in the amount of claims payments that it has incurred as a result of healthcare providers' refusal to accept the amount processed by EBMS, AMPS, and CDS.

37.     In taking these and other actions, EBMS failed to act in a manner which was solely in the interest of Monterey, the Plan, and Monterey's employees and employees' dependents who participated in the Plan or to act with the care, skill, prudence, and diligence under the circumstances that a prudent person acting in a like capacity would use.

38.     EBMS is liable under ERISA section 409 to make good any losses incurred by the Plan as a result of EBMS' breach, to restore any personal profits it received, and for such other equitable or remedial relief as the court may deem appropriate.

39.     As a result of EBMS' breach of fiduciary duties, Monterey and the Plan suffered damages in excess of $1.6 million.

Breach of Fiduciary Duty under Section 502(a)(2) against CDS

40.     All of the factual allegations set forth above in paragraphs 1 through 39 are incorporated by reference as though set forth herein.

41.     CDS is a named fiduciary of the Plan in Monterey's service agreement with CDS and AMPS. Additionally, CDS is also fiduciary of the Plan within the meaning of ERISA sections 3(21)(A)(i) and (iii) because CDS had authority over Plan assets, and exercised discretion regarding the design and terms of the SPD as well as cost savings mechanisms for claim processing.

42.     As part of its fiduciary duty, CDS has the legal duty to provide full, fair and prompt disclosure to Monterey of all facts within its knowledge which were or could have been material to matters within CDS' relationship with Monterey. The facts show CDS breached this legal duty. Specific examples are shown by the following actions and/or omissions:

a.     Drafting an SPD which violated federal law, including, but not limited to: (1) the ACA mandates, including the "minimum value" provision and rendering the Plan unaffordable, and (2) ERISA, including the disclosure requirements for plan subjects;

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

b.   Drafting an illusory SPD which shifted the risk for losses from to Monterey and Monterey's employees and employees' dependents;

c.   Failing to disclose to Monterey, the Plan, and Monterey's employees and employees' dependents the nature and scope of their liability for claims left unpaid by the self-funded plan and the Claim Review and Validation and RBR Programs, and then exposing them to that liability for unpaid claims;

d.   Failing to administer the Plan according to the SPD and discounting all medical claims paid;

e.   Failing to correctly communicate the Plan's benefits to healthcare providers and making false representations about the Plan's benefits to healthcare providers. For example, EBMS made false representations to Salinas Valley Hospital that the Plan would cover 70% of a patient's medical bills, up to $21,666, after which the Plan would cover 100%; and

f.   Engaging in a pricing scheme and exposing Monterey and the Plan to litigation from hospitals.

g.   Or otherwise as alleged above.

43.   CDS further breached its fiduciary duty by misrepresenting to Monterey that the self-funded plan and Claim Review and Validation and RBR Programs would result in savings to Monterey and the Plan. These representations were made in order to induce Monterey to create a self-funded plan administered by EBMS and retain AMPS and CDS to administer the Claim Review and Validation and RBR Programs. These misrepresentations were material because without them, Monterey would not have signed the services agreement with AMPS and CDS. As a result of Monterey's reliance on CDS' misrepresentations, Monterey was damaged in the amount of claims payments that it has incurred as a result of healthcare providers' refusal to accept the amount processed by EBMS, AMPS, and CDS.

///

44.   In taking these and other actions, CDS failed to act in a manner which was solely in the interest of Monterey, the Plan, and Monterey's employees and employees' dependents who

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

1  participated in the Plan, or to act with the care, skill, prudence, and diligence under the circumstances

2  that a prudent person acting in a like capacity would use.

3      45.    CDS is liable under ERISA section 409 to make good any losses incurred by the Plan

4  as a result of EBMS' breach, to restore any personal profits it received, and for such other equitable

5  or remedial relief as the court may deem appropriate.

6      46.    As a result of CDS' breach of fiduciary duties, Monterey and the Plan suffered

7  damages in excess of $1.6 million.

8  <u>Breach of Fiduciary Duty under Section 502(a)(2) against AMPS</u>

9      47.    All of the factual allegations set forth above in paragraphs 1 through 46 are

10  incorporated by reference as though set forth herein.

11      48.    AMPS purchased CDS in 2014, and took full managerial control of CDS in 2016.

12  Pursuant to Monterey's service agreement with CDS, CDS assigned all of its rights and obligations

13  under the services agreement to AMPS.

14      49.    AMPS (through CDS) is a named fiduciary of the Plan in Monterey's service

15  agreement. Additionally, AMPS is also a fiduciary of the Plan within the meaning of ERISA sections

16  3(21)(A)(i) and (iii) because AMPS had authority over Plan assets, and exercised discretion regarding

17  the design and terms of the SPD, and cost savings mechanisms for claim processing.

18      50.    As part of its fiduciary duty, AMPS had the legal duty to provide full, fair and prompt

19  disclosure to Monterey of all facts within its knowledge which were or could have been material to

20  matters within AMPS' relationship with Monterey. The facts show AMPS breached this legal duty.

21  Specific examples are shown by the following actions and/or omissions:

22      a.    Drafting an SPD which violated federal law, including, but not limited to: (1) the ACA

23      mandates including the "minimum value" provision and rendering the Plan

24      unaffordable, and (2) ERISA, including the disclosure requirements for plan subjects;

25      b.    Drafting an illusory SPD which shifted the risk for losses to Monterey and Monterey's

26      employees and employees' dependents;

27      c.    Failing to disclose to Monterey, the Plan, and Monterey's employees and employees'

28      dependents the nature and scope of their liability for claims left unpaid by the self-

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL, SUITE 2500
SACRAMENTO, CA 95814

funded plan and Claim Review and Validation and RBR Programs, and then exposing them to that liability for unpaid claims;

d.    Failing to administer the Plan according to the SPD and discounting all medical claims paid;

e.    Failing to correctly communicate the Plan's benefits to healthcare providers; and making false representations about the Plan's benefits to healthcare providers. For example, EBMS made false representations to Salinas Valley Hospital that the Plan would cover 70% of a patient's medical bills, up to $21,666, after which the Plan would cover 100%; and

f.    Engaging in a pricing scheme and exposing Monterey and the Plan to litigation from hospitals.

g.    Or otherwise as alleged above.

51.    AMPS further breached its fiduciary duty by misrepresenting to Monterey that the self-funded plan and the Claim Review and Validation and RBR Programs would result in savings to Monterey and the Plan. These representations were made in order to induce Monterey to create a self-funded plan administered by EBMS and retain AMPS and CDS to administer the Claim Review and Validation and RBR Programs. These misrepresentations were material because without them, Monterey would not have signed the services agreement with AMPS and CDS. As a result of Monterey's reliance on AMPS' misrepresentations, Monterey and the Plan were damaged in the amount of claims payments that they have incurred as a result of healthcare providers' refusal to accept the amount processed by EBMS, AMPS, and CDS.

52.    In taking these and other actions, AMPS failed to act in a manner which was solely in the interest of Monterey, the Plan, and Monterey's employees and employees' dependents who participated in the Plan or to act with the care, skill, prudence, and diligence under the circumstances that a prudent person acting in a like capacity would use.

53.    AMPS is liable under ERISA section 409 to make good any losses incurred by the Plan as a result of EBMS' breach, to restore any personal profits it received, and for such other equitable or remedial relief as the court may deem appropriate.

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

54.     As a result of AMPS' breach of fiduciary duties, Monterey and the Plan suffered damages in excess of $1.6 million.

Breach of Fiduciary Duty under Section 502(a)(3) against ALLIANT

55.     All of the factual allegations set forth in paragraphs 1 through 54 above are incorporated by reference as though set forth herein.

56.     Alliant is liable as a non-fiduciary service provider to the Plan for the breach of fiduciary duty by EBMS, AMPS, and CDS because Alliant knowingly participated in the violations against the Plan. 29 U.S.C. § 1105.

57.     The facts, as outlined above, show that Alliant knew EBMS, AMPS, and CDS were fiduciaries of the Plan and that they owed special duties to Monterey and the Plan as a result of that relationship. Alliant was aware of the misrepresentations made to the Plan and Monterey relating to purported savings of utilizing a self-funded plan and the Claim Review and Validation and RBR programs, and how the Claim Review and Validation and RBR programs worked. However, Alliant never informed Monterey or the Plan that these representations were false. Instead, Alliant permitted EBMS, AMPS, and CDS to proceed with their scheme against Monterey and the Plan and their breach of fiduciary duties.

58.     As a result of Alliant's knowing participation in EBMS, AMPS, and CDS' breach of fiduciary duties, Alliant is liable to Monterey and the Plan for damages it incurred as a result of these breaches.

**SECOND CAUSE OF ACTION**

**(Breach of Written Contract against All Defendants)**

Breach of Written Contract against EBMS

59.     All of the factual allegations set forth in paragraphs 1 through 58 above are incorporated by reference as though set forth herein.

60.     Monterey entered into a service agreement with EBMS in 2014. The service agreement required Monterey to pay EBMS a fee. Monterey paid the fee to EBMS. In exchange for the fee, the service agreement required EBMS to perform services for Monterey and the Plan. These

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL, SUITE 2500
SACRAMENTO, CA 95814

services, included, but are not limited to:

**SEC. II**      **DUTIES AND RESPONSIBILITIES OF THE CONTRACT ADMINISTRATOR**

2.01      The Contract Administrator agrees to perform the following administrative services for the Plan Sponsor:

     (a)      assist in the preparation and printing of a Plan Document, summaries of benefits, identification cards, and other material necessary to the operation of the Plan;

     (b)      process and adjudicate all claims presented for payment in accordance with the Plan Document, including but not limited to reasonable investigatory work in determining claim eligibility, and preparing and distributing benefit checks, and Explanation of Benefits to Plan Members and/or service providers, as applicable;

     (c)      Contract Administrator shall review and respond to appeals made by Plan Members of adverse benefit determinations as may be required in the Plan Document.

     (d)      To the extent set forth in the Plan Document, Contract Administrator, on behalf of Plan Sponsor, will facilitate reviews required by an Independent Review Organization (IRO). The Contract Administrator will submit all documentation regarding the appeal to the IRO and work with the IRO as needed to complete its review. The Contract Administrator will pass all costs of the IRO review on to the Plan Sponsor as described in Schedule A. Plan Sponsor will be responsible for collecting any allowable reimbursements from the Plan Member;

     (e)      corresponding with Plan Members and their representatives regarding possible third-party liability for expenses paid by the Plan on Plan Member's behalf, as set forth in Schedule L. Contract Administrator shall have no responsibility or liability for the refusal of Plan Members or their representatives to reimburse the Plan for such expenses. Contract Administrator shall have no obligation to take any legal action to enforce the Plan's subrogation rights;

     (f)      respond to inquiries from the Plan Sponsor, Plan Members and service providers concerning requirements, procedures or benefits of the Plan, though such information shall constitute a determination of benefits that will be paid under the Plan or a guarantee or certification to anyone that any amount will be paid. Benefit determinations can only be made after a complete claim is submitted and fully processed by the Contract Administrator, and are subject to all eligibility requirements, limitations, exclusions and other provisions in effect when a claim is processed;

61.      EBMS breached the services agreement by failing to perform these services, as well as other provisions in the services agreement with Monterey.

62.      As a result of EBMS' breach, Monterey and the Plan suffered damages in excess of $1.6 million.

Breach of Written Contract against CDS

63.      All of the factual allegations set forth in paragraphs 1 through 62 above are incorporated by reference as though set forth herein.

64.      Monterey entered into a service agreement with CDS in 2014. The services agreement required Monterey to pay CDS a fee. Monterey paid the fee to CDS. In exchange for the fee, the service agreement required CDS to perform services for Monterey and the Plan. These services

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

included, but were not limited to:

65.     CDS breached the services agreement by failing to perform these services, as well as

•Description of Services.  CDS assumes the obligations will provide the services described below (the "Services"), subject to and in accordance with the Required Modifications and the New Plan Document.  CDS agrees to:

•Manage and oversee the Claim Review and Validation Program and subject Hospital and Facility Claims to the level of review that, in the discretion of CDS, is appropriate or desirable under the facts and circumstances relating to such Claims;

•Make the Delegated Claims Decisions and engage, at its own expense, such Billing Review Specialists, Medical Review Specialists and other expert or professional advisors as CDS, in its discretion, deems appropriate based on the relevant facts and circumstances (it being understood that, barring a material reason to do otherwise, CDS intends to use Anasazi Medical Payment Systems, Inc. d/b/a "AMPS" as the primary Billing Review Specialist);

•Handle HFC Benefit Determinations and Final HFC Appeals in accordance with the New Plan Document, and advise the Plan Administrator and Claims Administrator regarding the same;

•Maintain the Advocacy Program and offer Balance-Billing Advocacy for Participants who need and desire it;

•Provide an explanatory video (in both English and English with Spanish subtitles) to educate Company employees about the Claim Review and Validation Program, the Permitted Payment Levels for Hospital and Facility benefits, and the Advocacy Program; and

other provisions in the services agreement with Monterey.

66.     As a result of CDS' breach, Monterey and the Plan suffered damages in excess of $1.6 million.

Breach of Written Contract against AMPS

67.     All of the factual allegations set forth in paragraphs 1 through 66 above are incorporated by reference as though set forth herein.

68.     Monterey entered into a service agreement with CDS in 2014.

69.     AMPS purchased CDS in 2014, and took full managerial control of CDS in 2016. Pursuant to Monterey's service agreement with CDS, CDS assigned all of its rights and obligations under the services agreement with Monterey to AMPS. The services agreement required Monterey to pay AMPS a fee otherwise payable to CDS. Monterey paid the fee to AMPS. Exchange for the fee, the service agreement required AMPS to perform the Services for Monterey and the Plan as stated in CDS services agreement with Monterey.

///

///

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

70.     Monterey's service agreement with CDS required AMPS to perform services for Monterey and the Plan. These services included, but were not limited to:

- Description of Services. CDS assumes the obligations will provide the services described below (the "Services"), subject to and in accordance with the Required Modifications and the New Plan Document. CDS agrees to:
- Manage and oversee the Claim Review and Validation Program and subject Hospital and Facility Claims to the level of review that, in the discretion of CDS, is appropriate or desirable under the facts and circumstances relating to such Claims;

- Make the Delegated Claims Decisions and engage, at its own expense, such Billing Review Specialists, Medical Review Specialists and other expert or professional advisors as CDS, in its discretion, deems appropriate based on the relevant facts and circumstances (it being understood that, barring a material reason to do otherwise, CDS intends to use Anasazi Medical Payment Systems, Inc. d/b/a "AMPS" as the primary Billing Review Specialist);

- Handle HFC Benefit Determinations and Final HFC Appeals in accordance with the New Plan Document, and advise the Plan Administrator and Claims Administrator regarding the same;

- Maintain the Advocacy Program and offer Balance-Billing Advocacy for Participants who need and desire it;

- Provide an explanatory video (in both English and English with Spanish subtitles) to educate Company employees about the Claim Review and Validation Program, the Permitted Payment Levels for Hospital and Facility benefits, and the Advocacy Program; and

71.     AMPS, independently and through CDS, breached the services agreement by failing to perform these services, as well as other provisions in the services agreement with Monterey.

72.     Moreover, as the owner of CDS, AMPS is liable for CDS' breaches of the services agreement between Monterey and CDS.

73.     As a result of AMPS breach, Monterey and the Plan suffered damages in excess of $1.6 million.

Breach of Written Contract against Alliant

74.     All of the factual allegations set forth in paragraphs 1 through 73 above are incorporated by reference as though set forth herein.

75.     Monterey entered into an agreement with Alliant in 2014.

76.     The agreement required Monterey to pay Alliant a fee. Monterey paid the fee to Alliant. In exchange for the fee, the agreement required Aliant to perform services for Monterey and the Plan. These services included, but were not limited to:

   a.   Prepare a self-funded plan for Monterey that complied with federal law including, but not limited to, the ACA and ERISA;

   b.   Select administrative services entities that provided services that complied with

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL, SUITE 2500
SACRAMENTO, CA 95814

1       federal law including, but not limited, to the ACA and ERISA;

2       c.  Prepare and analyze business proposals and supporting documents in the best

3           interest of Monterey and the proposed self-funded plan;

4       d.  Review contracts, amendments, and the SPD for accuracy and coverage, and

5           identify errors and coordinate the corrections; and

6       e.  Provide claims, eligibility, billing and plan administration advocacy and

7           resolution.

8       f.  Otherwise acting as alleged above.

9     77.    Alliant breached the agreement by failing to perform these services, as well as other

10  terms in the agreement with Monterey.

11     78.    As a result of Alliant's breach, Monterey and the Plan suffered damages in excess of

12  $1.6 million.

13                  **THIRD CAUSE OF ACTION**

14        **(Professional Negligence against All Defendants)**

15  Professional Negligence against EBMS

16     79.    All of the factual allegations set forth in paragraphs 1 through 78 above are

17  incorporated by reference as though set forth herein.

18     80.    Throughout the course of their dealings with Monterey, EBMS held themselves out as

19  skilled administrators of self-funded plans, having superior knowledge regarding their ability to

20  administer self-funded plans. EBMS intended that Monterey rely, and Monterey did rely, on EBMS'

21  alleged expertise and advice in connection with Monterey's self-funded plan.

22     81.    Monterey entered into a service agreement with EBMS in 2014. Monterey's service

23  agreement with EBMS required EBMS to perform services for Monterey and the Plan as stated

24  previously in this Third-Party Complaint, including paragraph 60. In doing so, EBMS was required

25  to use the skill and care that a reasonably careful administrative service organization/third-party

26  administrator would have used in similar circumstances.

27     82.    Monterey is informed and believes, and on that basis alleges, that EBMS failed to use

28  the skill and care that a reasonably careful administrative service organization/third-party

Kennaday Leavitt Owensby PC
ATTORNEYS AT LAW
621 CAPITOL MALL, SUITE 2500
SACRAMENTO, CA 95814

administrator would have used in similar circumstances by, among other things:

a. Drafting an SPD which violated federal law, including, but not limited to: (1) the ACA mandates, including the "minimum value" provision and rendering the Plan unaffordable, and (2) ERISA, including the disclosure requirements for plan subjects;

b. Drafting an illusory SPD which shifted the risk for losses to Monterey and Monterey's employees and employees' dependents;

c.  Failing to act in the best interest of Monterey, the Plan, Monterey's employees, and employees' dependents by causing Monterey and the Plan to engage AMPS and CDS' services, which exposed Monterey and Monterey's employees and employees' dependents to collection activities from providers;

d. Failing to disclose to Monterey, the Plan, and Monterey's employees and employees' dependents the nature and scope of their liability for claims left unpaid by the self-funded plan, the Claim Review and Validation Program, and the RBR Program, and then exposing them to that liability for unpaid claims;

e. Failing to administer the Plan according to the SPD and discounting all medical claims paid;

f. Failing to correctly communicate the Plan's benefits to healthcare providers and making false representations about the Plan's benefits to healthcare providers. For example, EBMS made false representations to Salinas Valley Hospital that the Plan would cover 70% of a patient's medical bills, up to $21,666, after which the Plan would cover 100%; and

g. Otherwise acting as alleged above.

83. As a direct and proximate cause of EBMS' negligence, Monterey suffered damages in excess of $1.6 million, plus costs and interest thereon.

Professional Negligence against CDS

84. All of the factual allegations set forth in paragraphs 1 through 83 above are incorporated by reference as though set forth herein.

85. Throughout the course of their dealings with Monterey, CDS held itself out as a skilled

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

third-party administrator of self-funded plans, having superior knowledge regarding its ability to administer self-funded plans, including pricing and adjudicating healthcare claims. CDS intended that Monterey rely, and Monterey did rely, on CDS' alleged expertise and advice in connection with Monterey's self-funded plan.

86.     Monterey entered into a service agreement with CDS in 2014. Monterey's service agreement with CDS required CDS to perform services for Monterey and the Plan as stated previously in this Third-Party Complaint, including paragraph 64. In doing so, CDS was required to use the skill and care that a reasonably careful third-party administrator would have used in similar circumstances.

87.     Monterey is informed and believes, and on that basis alleges, that CDS failed to use the skill and care that a reasonably careful third-party administrator would have used in similar circumstances by, among other things:

    a.    Drafting an SPD which violated federal law, including, but not limited to: (1) the ACA mandates, including the "minimum value" provision and rendering the Plan unaffordable, and (2) ERISA, including the disclosure requirements for plan subjects;

    b.    Drafting an illusory SPD which shifted the risk for losses from to Monterey and Monterey's employees and employees' dependents;

    c.    Failing to disclose to Monterey, the Plan, and Monterey's employees and employees' dependents the nature and scope of their liability for claims left unpaid by the self-funded plan and the Claim Review and Validation and RBR Programs, and then exposing them to that liability for unpaid claims;

    d.    Failing to administer the Plan according to the SPD and discounting all medical claims paid;

    e.    Failing to correctly communicate the Plan's benefits to healthcare providers and making false representations about the Plan's benefits to healthcare providers. For example, EBMS made false representations to Salinas Valley Hospital that the Plan would cover 70% of a patient's medical bills, up to $21,666, after which the Plan would cover 100%;

    f.    Engaging in a pricing scheme and exposing Monterey and the Plan to litigation from

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL, SUITE 2500
SACRAMENTO, CA 95814

1    hospitals; and

2    g.    Otherwise acting as alleged above.

3    88.    As a direct and proximate cause of CDS' negligence, Monterey suffered damages in

4    excess of $1.6 million, plus costs and interest thereon.

5    Professional Negligence against AMPS

6    89.    All of the factual allegations set forth in paragraphs 1 through 88 above are

7    incorporated by reference as though set forth herein.

8    90.    Throughout the course of their dealings with Monterey, AMPS held itself out as a

9    skilled third-party administrator of self-funded plans, having superior knowledge regarding its ability

10   to administer self-funded plans, including pricing and adjudicating healthcare claims. AMPS intended

11   that Monterey rely, and Monterey did rely, on AMPS' alleged expertise and advice in connection

12   with Monterey's self-funded plan.

13   91.    Monterey entered into a service agreement with CDS in 2014.

14   92.    AMPS purchased CDS in 2014, and took full managerial control of CDS in 2016.

15   Pursuant to Monterey's service agreement with CDS, CDS assigned all of its rights and obligations

16   under the services agreement with Monterey to AMPS.

17   93.    Monterey's service agreement with CDS required AMPS to perform services for

18   Monterey and the Plan as stated previously in this Third-Party Complaint, including paragraph 70. In

19   doing so, AMPS was required to use the skill and care that a reasonably careful third-party

20   administrator would have used in similar circumstances.

21   94.    Monterey is informed and believes, and on that basis alleges, that AMPS failed to use

22   the skill and care that a reasonably careful administrative service organization/third-party

23   administrator would have used in similar circumstances by, among other things:

24   a.    Drafting an SPD which violated federal law, including, but not limited to: (1) the ACA

25        mandates, including the "minimum value" provision and rendering the Plan

26        unaffordable, and (2) ERISA, including the disclosure requirements for plan subjects;

27   b.    Drafting an illusory SPD which shifted the risk for losses to Monterey and Monterey's

28        employees and employees' dependents;

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL, SUITE 2500
SACRAMENTO, CA 95814

00141025.1

MONTEREY PENINSULA HORTICULTURE, INC.'S THIRD-PARTY COMPLAINT

c.      Failing to act in the best interest of Monterey, the Plan, Monterey's employees, and employees' dependents by causing Monterey and the Plan to engage AMPS and CDS' services, which exposed Monterey and Monterey's employees and employees' dependents to collection activities from providers;

d.      Failing to disclose to Monterey, the Plan, and Monterey's employees and employees' dependents the nature and scope of their liability for claims left unpaid by the self-funded plan, the Claim Review and Validation Program, and the RBR Program, and then exposing them to that liability for unpaid claims;

e.      Failing to administer the Plan according to the SPD and discounting all medical claims paid;

f.      Failing to correctly communicate the Plan's benefits to healthcare providers and making false representations about the Plan's benefits to healthcare providers. For example, EBMS made false representations to Salinas Valley Hospital that the Plan would cover 70% of a patient's medical bills, up to $21,666, after which the Plan would cover 100%; and

g.      Otherwise acting as alleged above.

95.      As a direct and proximate cause of AMPS' negligence, Monterey suffered damages in excess of $1.6 million, plus costs and interest thereon.

Professional Negligence against Alliant

96.      All of the factual allegations set forth in paragraphs 1 through 95 above are incorporated by reference as though set forth herein.

97.      Throughout the course of its dealings with Monterey, Alliant held itself out as a skilled insurance broker, having superior knowledge regarding its ability to procure insurance policies for Monterey. Alliant intended that Monterey rely, and Monterey did rely, on Alliant' alleged expertise and advice in connection with Monterey's self-funded plan.

98.      Monterey entered into an agreement with Alliant. Monterey's agreement with Alliant required Alliant to perform services for Monterey and the Plan as stated previously in this Third-Party Complaint, including paragraph 76. In doing so, EBMS was required to use the skill and care

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

that a reasonably careful insurance broker would have used in similar circumstances.

99.     Monterey is informed and believes, and on that basis alleges, that EBMS failed to use the skill and care that a reasonably careful insurance broker would have used in similar circumstances by, among other things:

    a.   Prepare a self-funded plan for Monterey that complied with federal law including, but not limited, to the ACA and ERISA;

    b.   Select administrative services entities that provided services that complied with federal law including, but not limited, to the ACA and ERISA;

    c.   Prepare and analyze business proposals and supporting documents in the best interest of Monterey and the proposed self-funded plan;

    d.   Review contracts, amendments, and the SPD for accuracy and coverage, and identify errors and coordinate the corrections;

    e.   Provide claims, eligibility, billing and plan administration advocacy and resolution; and

    f.   Otherwise acting as alleged above.

100.    As a direct and proximate cause of EBMS' negligence, Monterey suffered damages in excess of $1.6 million, plus costs and interest thereon.

## PRAYER FOR RELIEF

**WHEREFORE**, Monterey prays for a judgment against Defendants as follows:

A.     Judgment in an amount equal to Monterey's actual damages for each claim;

B.     Ordering EBMS, AMPS, CDS, and Alliant to each pay all reasonable costs and expenses of an independent administrator in re-adjudicating the claims set forth above and the reasonable costs and expenses associates with correcting all improperly adjudicated claims identified in this Complaint;

C.     Requiring each Defendant to disgorge all unjust enrichment or profits received as a result of fiduciary breaches committed by them or for which they are liable;

D.     For an injunction against each EBMS, AMPS, CDS, and Alliant for any and all such continuing conduct;

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

1    E.      Attorney's fees and costs pursuant to ERISA section 502(g); and

2    F.      Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Monterey demands a jury trial against EBMS, CDS, AMPS and Alliant, and each of them.

DATED: December 13, 2018

KENNADAY LEAVITT OWENSBY PC

By: _____

LANCE M. MARTIN
Attorneys for Defendants
MONTEREY PENINSULA
HORTICULTURE, INC. dba ROCKET
FARMS; and MONTEREY PENINSULA
HORTICULTURE / STEVEN ROBERTS
ORIGINAL DESSERTS, LLC, EMPLOYEE
BENEFIT PLAN

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL, SUITE 2500
SACRAMENTO, CA 95814

00141025.1

-25-

MONTEREY PENINSULA HORTICULTURE, INC.'S THIRD-PARTY COMPLAINT

## PROOF OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Sacramento, State of California. My business address is 621 Capitol Mall, Suite 2500, Sacramento, CA 95814.

On December 13, 2018, I served true copies of the following document(s) described as **MONTEREY PENINSULA HORTICULTURE, INC.'S THIRD-PARTY COMPLAINT** on the interested parties in this action as follows:

[x]  **BY EMAIL:** I caused such documents to be served via electronic mail transmittal to the offices of the email addresses herein described.

Eric D. Chan
HOOPER, LUNDY & BOOKMAN, P.C.
1875 Century Park East, Suite 1600
Los Angeles, California 90067
echan@health-law.com

cc: Griselda Rodriguez (grodriguez@health-law.com)

[x]  **BY PERSONAL SERVICE:** By causing delivery by hand via reliable messenger service to the interested parties at the address(es) set forth herein.

| | |
|---|---|
| EMPLOYEE BENEFIT MANAGEMENT SERVICES, INC.<br>1075 Overland Ave.<br>Billings, MT 59102 | ADVANCED MEDICAL PRICING SOLUTIONS, INC.<br>35 Technology Parkway, Suite 100<br>Peachtree Corners, GA 30092 |
| CLAIMS DELEGATE SERVICES, LLC<br>420 Technology Parkway<br>Norcross, GA 30092 | ALLIANT INSURANCE SERVICES, INC.<br>1301 Dove Street, Suite 200<br>Newport Beach, CA 92660 |

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on December 13, 2018, at Sacramento, California.



Erin Harris

KENNADAY LEAVITT OWENSBY PC
ATTORNEYS AT LAW
621 CAPITOL MALL | SUITE 2500
SACRAMENTO, CA 95814

MONTEREY PENINSULA HORTICULTURE, INC.'S THIRD-PARTY COMPLAINT