1  DANIEL A. PLATT (SBN 132665)
   dplatt@loeb.com
2  ARTHUR FELS (SBN 294802)
   afels@loeb.com
3  LOEB & LOEB LLP
   10100 Santa Monica Blvd., Suite 2200
4  Los Angeles, CA  90067
   Telephone: 310.282.2000
5  Facsimile: 310.282.2200

6  Attorneys for Defendant
   EMPLOYEE BENEFIT
7  MANAGEMENT SERVICES, INC.

8

9                    UNITED STATES DISTRICT COURT

10      NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

11

12  SALINAS VALLEY MEMORIAL          )  Case No.: 5:17-cv-07076-VKD
    HEALTHCARE SYSTEM,               )
13                                   )  Hon. Mag. Judge Virginia K.
              Plaintiff,             )  DeMarchi
14                                   )
         vs.                         )  Date: April 2, 2019
15                                   )  Time: 10:00 a.m.
    MONTEREY PENINSULA               )  Place: Courtroom 2
16  HORTICULTURE, INC. d/b/a         )
    ROCKET FARMS; MONTEREY           )  **DECLARATION OF J.**
17  PENINSULA HORTICULTURE,          )  **MATTHEW JOHNSON IN**
    INC./STEVEN ROBERTS, ORIGINAL    )  **SUPPORT OF THIRD-PARTY**
18  DESSERTS, LLC EMPLOYEE           )  **DEFENDANT EMPLOYEE**
    BENEFIT PLAN; EMPLOYEE           )  **BENEFIT MANAGEMENT**
19  BENEFIT MANAGEMENT               )  **SERVICES, INC.'S MOTION TO**
    SERVICES, INC.; ANASAZI          )  **DISMISS MONTEREY**
20  MEDICAL PAYMENT SOLUTIONS,       )  **PENINSULA HORTICULTURE,**
    INC. d/b/a ADVANCED MEDICAL      )  **INC.'S THIRD-PARTY**
21  PRICING SOLUTIONS;               )  **COMPLAINT PURSUANT TO**
                                     )  **FED. R. CIV. P. 12(B)(6)**
22            Defendants.            )
                                     )  Complaint Filed: December 13, 2017
23                                   )  Trial Date: None Set
                                     )
24  _____ )

25

26

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

17408088.1              DECLARATION OF J. MATTHEW JOHNSON IN SUPPORT OF
231426-10003                         MOTION TO DISMISS

## DECLARATION OF J. MATTHEW JOHNSON

I, J. Matthew Johnson, declare as follows:

1.      I am Corporate Counsel and Vice President of Legal at Employee Benefit Management Services, Inc. ("EBMS").  I make this declaration in support of the motion to dismiss filed by EBMS in Case No. 5:17-cv-07076-VKD.  The facts stated below are true of my own personal knowledge except for those matters stated on information and belief, which matters I believe to be true.

2.      I have been employed by EBMS since June 2018.  I am familiar with and maintain, among other things, the various agreements between EBMS and its clients. The documents attached collectively as Exhibit A are a true and correct copy of the 2014 Administrative Services Agreement and corresponding renewals for 2015 and 2016  between EBMS and Rocket Farms (except for pricing information, which has been redacted).

3.      I am also familiar with the legal dispute which is the subject of this action.  As of the date of this declaration, the parties have not mediated this dispute. EBMS was at all times, and remains, ready, willing and able to mediate in good faith.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February __, 2019, at Billings, Montana

DocuSigned by:

*Matt Johnson*

J. Matthew Johnson

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

17408088.3
231426-10003

DECLARATION OF J. MATTHEW JOHNSON IN SUPPORT OF
MOTION TO DISMISS

# EXHIBIT A

**EMPLOYEE BENEFIT MANAGEMENT SERVICES, INC.**

**ADMINISTRATIVE SERVICES AGREEMENT**

**for**

**MONTEREY PENINSULA HORTICULTURE, INC.**
**&**
**STEVEN ROBERTS ORIGINAL DESSERTS, LLC.**

RECEIVED

JAN 1  2015

EBMS - BILLINGS

# EMPLOYEE BENEFIT MANAGEMENT SERVICES, INC.

## ADMINISTRATIVE SERVICES AGREEMENT

THIS Agreement is dated this 1ª day of July, 2014, by and between Monterey Peninsula Horticulture, Inc. and Steven Roberts Original Desserts, LLC., 360 Espinosa Rd., Salinas, CA 93907, hereinafter referred to as the "Plan Sponsor," and Employee Benefit Management Services, Inc., of 2075 Overland Avenue, Billings, Montana 59102, hereinafter referred to as the "Contract Administrator."

WHEREAS, The Plan Sponsor has established an employee benefit plan, hereinafter called the "Plan", which provides for payment of certain welfare benefits to and for certain eligible individuals as defined by the Plan's master plan document, hereinafter called the "Plan Document", such individuals being hereinafter referred to as "Plan Members"; and,

WHEREAS, The Plan Sponsor desires to engage the services of the Contract Administrator to provide certain services with respect to the Plan as enumerated below;

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained herein, the parties hereto agree as follows:

## SEC. I       DUTIES AND RESPONSIBILITIES OF PLAN SPONSOR

1.01       The Plan Sponsor is the Plan Administrator and retains ultimate discretionary authority and all final authority and responsibility for the Plan and its operation. The Contract Administrator is empowered to act only as expressly stated in this Agreement or as mutually agreed to in writing.

1.02       The Plan Sponsor retains all final authority and responsibility in developing, and determining in accordance with applicable law, benefit provisions, and Plan language describing such benefit provisions, as outlined in the Plan Document, and, where necessary, trust document. Plan Sponsor will secure legal review of such documents from Plan Sponsor's legal counsel.

1.03       The Plan Sponsor shall have final authority in determining issues of eligibility and coverage under the Plan and claims to be paid by the Plan with the express exception of the amount of any claim eligible for reimbursement.

1.04       The Plan Sponsor shall have final authority as to the investment (if any) and use of any assets to fund the Plan.

1.05       The Plan Sponsor shall procure stop-loss coverage at levels sufficient to ensure the viability of the Plan, and shall determine and maintain the funding level required for prompt payment of all expenses incurred by the Plan. Such expenses shall include but shall not be limited to:

     (a)       specific and/or aggregate stop-loss insurance premiums;

     (b)       other insurance premiums;

     (c)       appropriate reserves for both reported and unreported claims; and

     (d)       payment of benefits pursuant to the Plan.

1.06       The Plan Sponsor shall be responsible for collecting all appropriate contributions to the Plan from all Plan Members. Failure to collect any such contributions shall not relieve the Plan Sponsor from its funding obligation to the Plan.

1.07      The Plan Sponsor shall be responsible for taking the following actions to facilitate the proper performance of the Contract Administrator's responsibilities:

(a)      provide the Contract Administrator with a complete and accurate list of all individuals eligible for benefits under the Plan, and who are enrolled in the Plan, by online entry of such information or by such other method as the parties may agree from time to time prior to the effective date;

(b)      notify the Contract Administrator, no less than monthly, of any changes in eligibility and participation. Notice of Plan Member termination must be given within thirty (30) days of the termination. Under no circumstances shall credits for administrative fees be retroactive beyond two (2) months, or to the beginning of the current Administrative Services Agreement, whichever time period is shorter;

(c)      review, approve and distribute to all eligible Plan Members (and return to Contract Administrator when necessary) all appropriate and necessary materials and documents, including but not limited to, Plan Documents, summaries of benefits, identification cards, enrollment forms, applications and notice forms as may be necessary for the operation of the Plan or to satisfy the requirements of State or Federal laws or regulations;

(d)      provide the Contract Administrator with copies of any and all revisions or changes to the Plan Document as soon as is reasonably known, but no later than sixty (60) days before the effective date of the changes, or as otherwise required under applicable law;

(e)      satisfy any and all required reporting, required responses, and disclosure requirements imposed by law and/or solicited from any and all governmental agencies;

(f)      maintain bank account(s) in the name of the Plan, in a financial institution mutually agreed upon by the Plan Sponsor and Contract Administrator, from which checks or drafts are issued to cover expenses of the Plan, hereinafter referred to as the "Plan Sponsor Account;"

(g)      provide the Contract Administrator with any additional information incidental to the Plan, as may be requested by the Contract Administrator from time to time;

(h)      review and respond to all final internal adverse benefit determinations as may be required in the Plan Document; and

(i)      perform any non-discrimination testing on the Plan as required by law.

(j)      provide adequate and timely funding and/or payment to satisfy all state and/or federal regulations, including but not limited to PPACA assessments, taxes, fees, and/or penalties, state or other federal agency fees, assessments, and taxes, upon the applicable effective date, whether known or unknown at the time of executing this Agreement . This provision shall survive the termination of this Agreement, as Plan Sponsor is solely responsible for any applicable assessments, taxes, fees and/or penalties associated with the Plan or related to the Plan Sponsor's requirements to offer coverage.

## SEC. II      DUTIES AND RESPONSIBILITIES OF THE CONTRACT ADMINISTRATOR

2.01      The Contract Administrator agrees to perform the following administrative services for the Plan Sponsor:

(a)      assist in the preparation and printing of a Plan Document, summaries of benefits, identification cards, and other material necessary to the operation of the Plan;

(b)      process and adjudicate all claims presented for payment in accordance with the Plan Document, including but not limited to reasonable investigatory work in determining claim eligibility, and preparing and distributing benefit checks, and Explanation of Benefits to Plan Members and/or service providers, as applicable;

(c)    Contract Administrator shall review and respond to appeals made by Plan Members of adverse benefit determinations as may be required in the Plan Document.

(d)    To the extent set forth in the Plan Document, Contract Administrator, on behalf of Plan Sponsor, will facilitate reviews required by an Independent Review Organization (IRO). The Contract Administrator will submit all documentation regarding the appeal to the IRO and work with the IRO as needed to complete its review. The Contract Administrator will pass all costs of the IRO review on to the Plan Sponsor as described on Schedule A. Plan Sponsor will be responsible for collecting any allowable reimbursements from the Plan Member;

(e)    corresponding with Plan Members and their representatives regarding possible third-party liability for expenses paid by the Plan on Plan Member's behalf, as set forth in Schedule L. Contract Administrator shall have no responsibility or liability for the refusal of Plan Members or their representatives to reimburse the Plan for such expenses. Contract Administrator shall have no obligation to take any legal action to enforce the Plan's subrogation rights;

(f)    respond to inquiries from the Plan Sponsor, Plan Members and service providers concerning requirements, procedures or benefits of the Plan, though such information shall not constitute a determination of benefits that will be paid under the Plan or a guarantee or certification to anyone that any amount will be paid. Benefit determinations can only be made after a complete claim is submitted and fully processed by the Contract Administrator, and are subject to all eligibility requirements, limitations, exclusions and other provisions in effect when a claim is processed;

(g)    maintain all claim files for the Plan in accordance with Section VI hereof;

(h)    in addition to utilization reports, prepare and provide monthly reports of contributions received from the Plan Sponsor and all disbursements made from the Plan. Standard reports that can be produced by the automated claims system in use by the Contract Administrator, will be available to the Plan Sponsor. These reports will be made available only to authorized individuals who will protect the privacy of such information in accordance with HIPAA and other applicable laws, as amended. Unless required by law, under no conditions will the Plan Sponsor use the information provided in any manner that could jeopardize an individual's privacy;

(i)    once a year, provide the Plan Sponsor with an annual summary report of the operation of its Plan;

(j)    provide information necessary for, and assist the Plan Sponsor in, preparing reports required by any local, state or federal government pertaining to the operation of the Plan. Additional compensation shall be negotiated between the parties for any unusual reporting or disclosure obligations;

(k)    assist the Plan Sponsor with the establishment of rates and provide the Plan Sponsor with information on rate structures for comparable benefit programs; and

(l)    obtain quotations, as requested by Plan Sponsor, for policies of insurance, if available, including stop-loss or excess risk coverage and/or ancillary coverages such as life and AD&D. The decision to purchase any such insurance shall be made solely by Plan Sponsor. Contract Administrator makes no representations or warranties regarding the adequacy of any particular coverage or carrier. Contract Administrator may receive commissions or other compensation in connection with Plan Sponsor's purchase of such insurance as described in the accompanying disclosure Schedule.

2.02    The Plan Sponsor may contract with Contract Administrator to provide claim payment services (run-in) for those claims which were incurred prior to the effective date of this Agreement. A fee may be charged on a per transaction basis. A transaction is considered any and all activities that generate an Explanation of Benefit or other benefit determination.

2.03 Contract Administrator shall cooperate with the Plan Sponsor in the defense of any action arising out of matters related to this Agreement. The defense of any legal action involving the Plan shall not be the obligation of the Contract Administrator..

2.04 Contract Administrator will perform the function of filing the information reporting returns (Form 1099) with the IRS under the Tax Identification Number of Contract Administrator. Both the Contract Administrator and the Plan Sponsor agree that the responsibility for said reporting is that of the Plan Sponsor.

2.05 Contract Administrator and Plan Sponsor agree that any and all functions performed by Contract Administrator on behalf of the Plan Sponsor do not give rise to Contract Administrator acting as a "fiduciary" of the Plan. Both parties agree that the Contract Administrator is not a fiduciary of or for the Plan; that Contract Administrator does not have discretionary authority or discretionary control with respect to the management of the Plan; that Contract Administrator does not exercise any authority or control with respect to the management or disposition of the assets of the Plan; that Contract Administrator does not render investment advice; and with respect to the foregoing, the Contract Administrator has no authority or responsibility to do so.

## SEC. III FEES OF THE CONTRACT ADMINISTRATOR

3.01 The Contract Administrator shall receive consideration in accordance with Schedule A herein incorporated by reference or as otherwise specifically denoted on another Schedule.

3.02 The Administrative Fees must be received by the Contract Administrator on or before the 10th day of the month for which they are due. The Administrative Fees described in Schedule A are payable in advance and may be deducted monthly by the Contract Administrator from the Plan Sponsor Account.

3.03 If the Plan Sponsor, for any reason whatsoever, fails to make a required fee payment by the 30th day of the month in which it is due, the Contract Administrator may:

 (a) after written notice to Plan Sponsor, suspend the performance of its services to the Plan Sponsor until such time as the Plan Sponsor makes the proper remittance;

 (b) charge interest to the Plan Sponsor on all past due fees at the rate of one and one-half percent (1½%) per month or the maximum rate allowed by law, whichever is less;

 (c) cease retroactively to the end of the month for which full payment was last received, all administrative services; and/or

 (d) commence termination of this Agreement in accordance with Section VIII.

3.04 In the event Contract Administrator advances any sums to a vendor or a state and/or federal agency on behalf of the Plan Sponsor, Plan Sponsor agrees to immediately reimburse Contract Administrator in full and the remedies in Section 3.03 will apply. This provision shall survive the termination of this Agreement.

3.05 If the number of participants enrolled in the Plan decreases by twenty-five percent (25%) or more when compared to the number of participants enrolled on the effective date of this Administrative Services Agreement, Contract Administrator shall have the right to prospectively adjust its administrative fee immediately upon written notice to the Plan Sponsor. The adjustment may be made regardless of any rate guarantee that may be in place for that period of time. If Plan Sponsor does not give its written consent within five (5) business days to the adjustment in fees, Contract Administrator may immediately terminate this Agreement.

3.06    The Contract Administrator shall not provide or be responsible for the expenses and cost of legal counsel, actuaries, certified public accountants, consulting physicians, consulting dentists, medical and other review charges for special claims investigations, independent medical review services or similar services performed for the Plan Sponsor. With the exception of independent medical reviews, the Contract Administrator shall not be authorized to engage such services or incur expense or cost therefore without the consent of the Plan Sponsor. Plan Sponsor hereby consents to reimburse Contract Administrator for any expense or cost incurred on behalf of the Plan Sponsor for said independent medical review services as set forth on Schedule A.

3.07    If Plan Sponsor fails to pay any undisputed fee, expense, tax, assessment, penalty, and/or any other sum due under this Agreement, Plan Sponsor shall pay all reasonable expenses incurred by Contract Administrator in collecting those sums, including reasonable attorney fees and costs.

## SEC. IV    CLAIMS PAYMENT

4.01    On a weekly basis, or as otherwise directed by the Plan Sponsor, the Contract Administrator shall provide a list of claims approved for payment under the Plan. The Plan Sponsor shall deposit sufficient funds in the Plan Sponsor Account to cover the approved claims within five (5) business days. The Contract Administrator shall issue checks from the Plan Sponsor Account to pay approved claims.

4.02    If the Plan Sponsor, for any reason whatsoever, fails to deposit sufficient funds in the Plan Sponsor Account within twenty (20) business days from the date requested by the Contract Administrator, or if the Contract Administrator has reasonable concerns regarding the Plan Sponsor's ability to sufficiently fund claims, the Contract Administrator may immediately, with prior notice to the Plan Sponsor, suspend or terminate the prescription drug card (if applicable), suspend all claims paying activities, notify PPO networks, the DOL, healthcare providers, participants, beneficiaries, and vendors, as applicable and/or take other necessary legal action until sufficient and timely claims funding is established.

4.03    Plan Sponsor acknowledges that Preferred Provider Organization (PPO) discounts may not be available for any claim "paid" outside of the terms of the PPO contract. Paid typically means processed, funded and mailed.

4.04    Plan Sponsor acknowledges that claims must be paid according to the terms of the underlying stop loss contract, if applicable, or the Plan Sponsor may not be reimbursed for claims that may otherwise qualify for reimbursement. Paid typically means processed, funded and mailed.

4.05    The Contract Administrator shall not be responsible for any late filings, penalties, fines, taxes, assessments, lost PPO discounts, unrealized stop-loss reimbursements, etc., that may result from late or inadequate funding (from any source), suspension or cessation of performance described herein.

4.06    Contract Administrator has no financial responsibility to the Plan Sponsor, or any other party, to pay for any professional, hospital or other bills related to a Member. Plan Sponsor will resolve billing and administrative issues directly with Providers. Upon request, the Contract Administrator will facilitate communications between Provider and Plan Sponsor to resolve billing and administrative issues.

## SEC. V    LIMITS OF THE CONTRACT ADMINISTRATOR'S RESPONSIBILITY

5.01    If a claim adjudication error should be discovered, the Contract Administrator shall use diligent efforts toward the recovery of any loss therefrom. Contract Administrator shall not be required to initiate legal proceedings for any such recovery and shall have no liability for such errors, provided they are reasonable, made in good faith, and within acceptable industry standards.

5.02    It is understood and agreed that the Contract Administrator is, and shall remain, an independent contractor with respect to the services being performed and shall, for no purpose, be deemed an employee or fiduciary of the Plan Sponsor.

5.03    It is understood and agreed that the Contract Administrator is not a "Plan Sponsor", "Plan Administrator" or "Fiduciary" of or for the Plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA") or applicable state law. Notwithstanding anything in the Agreement to the contrary, any delegation of authority or duties pursuant to this Agreement construed by a court of law or governmental agency to make the Contract Administrator such a Plan Administrator or fiduciary shall be null and void, and such duties are hereby retained by the Plan Sponsor. Accordingly, the services to be performed by Contract Administrator shall be limited to the ministerial services set forth in this Agreement and the performance by Contract Administrator of such services shall be subject to review by the Plan Sponsor.

5.04    The Contract Administrator shall have no responsibility, risk, liability or obligation for the funding of the Plan. The responsibility and obligation for funding the Plan shall be solely and totally the responsibility of the Plan Sponsor. Contract Administrator shall have no final discretionary authority or control over the management or disposition of Plan assets, and no authority over, or responsibility for, Plan administration. Contract Administrator is neither the Plan Sponsor or Plan Administrator, nor a provider of health care services. Contract Administrator shall have no responsibility for any insurance coverage relating to the Plan, Plan Members, or Plan Sponsor; or the nature or quality of professional health services rendered to Plan Members.

5.05    Contract Administrator and Plan Sponsor shall each be solely responsible for compliance with all laws, rules and regulations that are now or hereafter applicable to each of them and their own performance under this Agreement. Contract Administrator shall not be responsible for establishing or maintaining the Plan or ensuring the Plan Sponsor is in compliance with applicable State or Federal legal requirements, nor shall Contract Administrator be an entity that is responsible for payment under the Plan or for payment of any fees, assessments, penalties or taxes, regardless of whether such fees, assessments, penalties or taxes are assessed against the Plan, the Plan Sponsor, or the Contract Administrator on behalf of the Plan Sponsor. The Plan Sponsor shall, in its sole discretion, determine the source of funding for such fees, assessments, penalties, or taxes, and shall assume all liability for the appropriateness of use of Plan assets or Plan Sponsor general funds to pay such fees, assessments, penalties and taxes.

5.06    It is understood by the Plan Sponsor that the Contract Administrator is not an insurance company, investment advisor, plan administrator, fiduciary, custodian, law firm or actuarial firm.

5.07    Contract Administrator shall, when requested by Plan Sponsor, assist Plan Sponsor with the application for stop-loss insurance including completion of required disclosure documents. If Contract Administrator has provided administrative services under this or a prior Agreement in the twelve (12) consecutive months prior to the application for stop-loss insurance then Contract Administrator will complete the disclosure documents based on claims it has adjudicated and information it has received through utilization review. If the Contract Administrator has not provided administrative services during the prior twelve (12) consecutive month period, then it has no responsibility for the completeness of information submitted on the disclosure document.

5.08    In the event Contract Administrator does not procure stop-loss insurance for Plan Sponsor or assist Plan Sponsor in such procurement, Plan Sponsor shall indemnify and hold harmless Contract Administrator and its respective officers, partners, employees and agents from and against any and all expenses, claims, settlement costs, penalty, damages, judgments,, attorney's fees, actions or causes of action whatsoever to the extent that such results from the stop-loss carrier, stop-loss coverage, or lack thereof, and/or in any way connected with any act, failure to act, the performance of and/or failure to perform any and all obligations by or related to the stop-loss coverage selected and procured by the Plan Administrator/Sponsor or its Broker/agent. This provision shall survive the termination of any applicable stop-loss policy and/or contract as well as this Agreement.

5.09    Contract Administrator, on behalf of the Plan Sponsor, has agreed to perform the required duties and act as the Responsible Reporting Entity (RRE) with regard to and as defined by the Medicare Secondary Payer Mandatory Reporting Provisions in Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007. In the event the Contract Administrator is unable to report timely, accurate information, as required by law, due to the Plan Sponsor's failure to provide timely and accurate information, the Plan Sponsor agrees to hold the Contract Administrator harmless and indemnify the Contract Administrator for any and all resulting penalties and/or damages.

**SEC. VI**     **RECORDS**

6.01        The Contract Administrator shall maintain for seven (7) years following receipt or until they are provided to Plan Sponsor as provided in Section 8.04 below, in either electronic or paper form, all records and files in conjunction with the administrative services to be performed hereunder. The term "records and files" shall include, but shall not be limited to, the claim files, unissued and canceled checks, bank statements, copies of stop-loss applications and contracts, and copies of the account ledger sheets of the applicable bank accounts.

6.02        During normal business hours, individual claim files shall be available for inspection and copying by the Plan Sponsor and at the Plan Sponsor's expense, if appropriate releases and authorizations from all applicable claimants are executed and presented to the Contract Administrator or an appropriate Business Associate Agreement is in place.

6.03        The Contract Administrator shall, within thirty (30) days following written notice from the Plan Sponsor, allow the Plan Sponsor, or an authorized agent, to inspect or audit relevant records and files maintained by the Contract Administrator, at the administrative office of the Contract Administrator, during normal business hours. The Plan Sponsor shall be liable for any and all fees charged by the auditor. Any such agent or auditor that has access to the records and files maintained by the Contract Administrator shall, prior to beginning such inspection or audit, sign a written Business Associate Agreement and an agreement regarding the use of proprietary and confidential information and the right of the Contract Administrator to review and respond to the agent's or auditor's final report. Plan Sponsor agrees it will not contract with any entity to perform what can be categorized as a "contingency audit" (in which an auditing firm will retain a dollar percentage fee from claims they believe have been paid in error) or "database audit" (in which claims are screened against a database) of records and files maintained by Contract Administrator.

**SEC. VII**    **TERM OF AGREEMENT**

7.01        This agreement shall become effective at 12:01 a.m. on the 1st day of July, 2014, and shall remain in effect until terminated pursuant to Section VIII of this Agreement.

**SEC. VIII**   **TERMINATION**

8.01        This Agreement may be terminated:

    (a)     by either party by giving written notice of non-renewal to the other party at least forty five (45) days prior to the end of the then current term;

    (b)     immediately by the non-breaching party in the event the breaching party fails to correct a material breach to the reasonable satisfaction of the non-breaching party within fifteen (15) days after the breaching party receives written notification of breach from the non-breaching party;

    (c)     simultaneously upon the Chapter 7 bankruptcy filing of the Plan Sponsor and/or the Plan Administrator;

    (d)     upon written agreement of the parties; or

    (e)     upon the termination of the Plan.

8.02        A penalty for early termination will apply, equal to the Administrative Fees listed on Schedule A and payable for the remainder of the required forty five (45) day notice of termination.

8.03        Application of this Agreement to any state or jurisdiction may be prospectively discontinued by either party as of the date such party determines that it will be penalized, by such state or jurisdiction, for performance of its responsibilities under this Agreement.

8.04  Upon termination by either party, the Contract Administrator shall, within sixty (60) days, deliver to the Plan Sponsor a paid claims analysis, abbreviated case management summaries (if applicable), complete eligibility listings as well as a complete and final accounting of the financial status of the Plan if applicable. The cost of producing additional reports shall be the responsibility of the Plan Sponsor. The Contract Administrator shall retain, for seven (7) years after termination of this Agreement, all records and files, in either paper or electronic form, in accordance with standards of insurance record keeping. If the Plan Sponsor desires copies of all records and files, Plan Sponsor shall allow Contract Administrator reasonable time in which to duplicate this material and will reimburse Contract Administrator for reasonable costs incurred in its retrieval and duplication. If the Plan Sponsor desires possession of the records and files, the Contract Administrator shall, upon the request and at the expense of the Plan Sponsor, arrange for the delivery of this material to the Plan Sponsor or its authorized agent. Upon receipt of all records and files, the Plan Sponsor agrees to defend, indemnify and hold harmless the Contract Administrator, its directors, officers, representatives and employees against any and all claims, lawsuits, settlements, judgments, costs, penalties, damages and liabilities, including attorneys' fees, resulting from, or arising out of or in connection with, any function of the Contract Administrator under this agreement or with a claim for benefits under the Plan. The Plan Sponsor further understands and agrees that, upon receipt of the records and files, the Contract Administrator is forever released from all liability, loss or damage arising from any subsequent audit.

8.05  Upon termination of this Agreement, and for an additional fee, the Plan Sponsor and Contract Administrator may enter into a subsequent agreement whereby Contract Administrator will provide run-out claim payment services for claims received after the termination of this Agreement, but incurred prior to termination of this Agreement. The Contract Administrator may require payment in advance, and services will be provided only to the extent that Plan Sponsor provides sufficient and timely funding of claims payments.

8.06  Within four (4) months following termination, when requested by the Plan Sponsor, Contract Administrator shall deliver to the Plan Sponsor, data related to assist the Plan Sponsor's completion of Form 5500.

8.07  After termination of this Agreement and upon receipt of any funds received by the Contract Administrator on behalf of the Plan Sponsor, the Contract Administrator may keep all or a portion of said funds to the extent that any amounts are due to the Contract Administrator for the services discussed herein.

8.08  Upon termination of this Agreement all duties and responsibilities of the Contract Administrator shall cease unless specifically addressed within this agreement or as set forth in a separate run-out Agreement.

## SEC. IX  MISCELLANEOUS

9.01  This Agreement shall be governed by the laws of the State of Montana or, where applicable, Federal law.

9.02  The Contract Administrator shall indemnify and hold harmless the Plan Sponsor against any expense, loss, lawsuit, settlement costs, penalty, damage, liability, claim or judgment, including reasonable attorneys' fees, resulting from the negligent acts or omissions or willful misconduct of the Contract Administrator. The Plan Sponsor agrees to indemnify and hold harmless the Contract Administrator against any expense, loss, lawsuit, settlement costs, penalty, damage, liability, claim or judgment, including reasonable attorneys' fees, arising out of, or resulting from the Contract Administrator's performance of its services hereunder where the Contract Administrator has adhered to the framework of policies, interpretations, rules, practices and procedures made or established by the Plan Sponsor, or has otherwise performed its services without negligence or willful misconduct and, in accordance with industry practices, or is being considered an entity responsible for payment under the Plan, as referenced in Federal Medicare Secondary Payer laws and regulations. The provisions of this section shall apply to arbitration and all forms of alternative dispute resolution as well as litigation. These indemnifications shall survive the termination of this Agreement.

9.03  Contract Administrator shall not be responsible or obligated for the investment of any assets or funds of the Plan.

9.04    Payments to the Plan, and other Plan obligations, may pass through Contract Administrator's non-interest bearing disbursement account as a matter of convenience and for efficiency. Contract Administrator will incorporate sound business practices and be responsible for reasonable internal audits. Banking charges incurred in the ordinary course of business will be the responsibility of the Contract Administrator.

9.05    This Agreement, together with the Schedule(s) and any Amendments, constitutes the entire Agreement between Contract Administrator and Plan Sponsor with respect to the subject matter hereof, and supersedes all prior proposals, discussions, negotiations, and writings between the parties relating to such subject matter. This Agreement may only be modified in writing and executed by authorized representatives of both Contract Administrator and Plan Sponsor.

9.06    If any provision of this Agreement is held to be illegal or unenforceable by a court of competent jurisdiction, the remaining provisions shall remain in effect and the illegal or unenforceable provision shall be modified so as to conform to the original intent of this Agreement to the greatest extent legally permissible.

9.07    The obligations of either Contract Administrator or Plan Sponsor under this Agreement, shall be suspended during the continuance of any force majeure applicable to the party. The term "force majeure" shall mean any cause not reasonably within the control of the party claiming suspension, including, without limitation, an act of God, industrial disturbance, war, riot, weather-related disasters, earthquake, governmental action, and unavailability or break down of equipment. The party claiming suspension under this provision shall take reasonable steps to resume performance as soon as possible without incurring unreasonably excessive costs. If a force majeure suspension affecting one of the parties continues for more than thirty (30) days, the other party may elect to immediately terminate this Agreement by written notice on any business day thereafter.

9.08    Neither party may assign its rights or duties under this Agreement without the prior written consent of the other, except that either party may assign this Agreement to a subsidiary or affiliate of that party and may subcontract certain duties to non-affiliated third parties, provided that such assignments and subcontracts shall not relieve such party of any obligations or liability under this Agreement. This Agreement shall be binding upon and inure to the benefit of the parties' respective successors and permitted assigns.

9.09    Any failure by a party to enforce or require performance by the other party of any of the terms or conditions of this Agreement shall not constitute a waiver or a breach of any such term or condition thereafter occurring.

## SEC. X    PROVISIONS REQUIRED BY STATE STATUTES

10.01    Montana Code Annotated 33-17-602 requires that the following provisions be included in this Agreement. These provisions shall be disregarded and inapplicable unless they relate to state-regulated functions performed by the Contract Administrator for this particular Plan.

(a)    All insurance charges or premiums collected by the Contract Administrator, on behalf of the Plan Sponsor, and return premiums received from the Plan Sponsor, shall be held by the Contract Administrator in a fiduciary capacity. Such funds shall be immediately remitted to the person entitled to them or deposited promptly in a fiduciary bank account established and maintained by the Contract Administrator. The Contract Administrator shall cause the bank, in which the fiduciary account is maintained, to keep records clearly recording the deposits in and withdrawals from such account on behalf of the Plan Sponsor. The Contract Administrator shall promptly obtain and keep copies of all such records and, upon request of the Plan Sponsor, shall furnish copies of such records pertaining to deposits and withdrawals on behalf of the Plan Sponsor.

The Contract Administrator shall not pay any claim by withdrawals from such fiduciary account. Withdrawals from such account shall be made, as provided in this agreement, for:

    (1)    remittance to the Plan Sponsor;
    (2)    deposit in an account maintained in the name of the Plan Sponsor;
    (3)    transfer to and deposit in a claims paying account;

<table>
<tr><td>(4)</td><td>payment of commissions, fees, or charges; or</td></tr>
<tr><td>(5)</td><td>remittance of return premiums to the person entitled to the premium.</td></tr>
</table>

(b) Any policies, certificates, booklets, termination notices, or other written communications delivered by the Plan Sponsor to the Contract Administrator for delivery to Plan Members shall be delivered promptly after receipt of instructions to do so.

(c) Compensation to the Contract Administrator where the Contract Administrator adjusts or settles claims, shall in no way be contingent on claim experience. This shall not prevent the compensation of the Contract Administrator from being based on premiums or charges collected or number of claims paid or processed.

## SEC. XI    DISPUTE RESOLUTION

11.01    Plan Sponsor and Contract Administrator will meet and confer in an attempt to resolve any dispute arising out of or relating to this Agreement. A dispute not resolved within 60 days of this meeting will be submitted to mediation, which will be held in Billings, Montana in accordance with the American Arbitration Association ("AAA") Rules of Procedure for Mediation. A single mediator, either mutually selected by the parties or AAA and having at least 10 years' legal experience in healthcare, including but not limited to self-funding and ERISA, will mediate the dispute. If the dispute is not resolved through mediation, the parties will be free to pursue all legal and equitable remedies otherwise available, provided, however that any action taken or remedy sought must be initiated within one year of the parties' first meeting to resolve the dispute.

## SEC. XII    SCHEDULES TO THE AGREEMENT

12.01    The Schedules attached hereto, become part of the body of this Agreement, and are herein incorporated by reference when selected by the Plan Sponsor. Schedules or Amendments subsequently executed by both parties and attached hereto, shall become part of the body of this Agreement and incorporated herein.

IN WITNESS THEREOF the Parties hereto sign their names as duly authorized officers and have executed this Agreement.

PLAN SPONSOR:                                       CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture, Inc./              Employee Benefit Management Services, Inc.
Steven Roberts Original Desserts, L.L.C.

By: _____                       By: _____

Its: _____CFO_____                                  Its:    President

**SCHEDULE A**

**FEES**

A.  In accordance with Section III of the Administrative Services Agreement, the Plan Sponsor agrees to pay to the Contract Administrator the following Administrative Fees:



B.  Plan Sponsor agrees to remit the following amounts to Contract Administrator or its designee for services performed by certain vendors on behalf of the Plan Sponsor or Plan. Unless noted otherwise in Section C below, Contract Administrator shall forward all amounts received to the appropriate vendor or vendor account.



C.  The Plan Sponsor acknowledges and agrees that the Contract Administrator may receive additional compensation in connection with services provided to Plan Sponsor from sources other than the Plan Sponsor or Plan. Contract Administrator may receive any of the following:

1. Wrap Networks:

The Contract Administrator contracts with wrap network arrangements for discounted pricing of non-network claims. If a wrap network is utilized on claims for Plan Sponsor, the Contract Administrator will retain a portion of the fee to offset administrative expenses including claims data analysis, EDI Routing and processing services.

2. Claims Negotiation Services:

The Contract Administrator contracts with certain entities to perform large claim negotiation services. If a large claim negotiation service is utilized on claims for Plan Sponsor's Plan, the Contract Administrator will retain a percentage of the total savings realized and paid by Plan Sponsor under Section B up to a maximum of 25%, for claims processing and coordination, and related communications with the provider, Plan participant and applicable carriers.

3. PBM Services and Audit Support:

The Contract Administrator contracts with PBM vendors to provide prescription drug benefits for Plan Sponsor's Plan. In conjunction with the services provided to Plan Sponsor by the PBM, Contract Administrator provides client support services, benefit design assistance, auditing services, data integration services, On line Health portal and decision support, PBM Contract Negotiation, PBM market check analysis, implementation and benefit setup transfer, member communication development, data files, plan consultation, appeals coordination, coordinated review of medical necessity in certain instances, issue resolution support and coordination, eligibility audits, real time/ same day updates to online health portal, and other related support services. For EBMS Preferred PBM vendors, the Contract Administrator receives funding directly from the PBM vendor for such service support.

D.    Plan Sponsor authorizes Contract Administrator to deduct the administrative fees for each month from the Plan Sponsor Account. The Contract Administrator shall also be authorized to deduct any applicable taxes, fees, assessments and or penalties from the Plan Sponsor Account upon prior notice to the Plan Sponsor.

E.    A binder fee of N/A representing the first month's estimated fees shall be payable on or before the effective date of this Agreement.

F.    An initial one-time set-up fee of N/A for eligibility loading, plan building and other services, shall be payable prior to commencement of services under this agreement.

████████████████████████████████████████████████

H.    Additional Administrative Fees may be reflected on the applicable Schedule.

I.    The fee and rates outlined in Schedule A shall be renewed and revised as necessary, but in no event less than annually to be mutually acceptable to both parties.

Effective Date:  July 1, 2014

PLAN SPONSOR:                                          CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture, Inc./                Employee Benefit Management Services, Inc.
Steven Roberts Original Desserts, LLC.

By:  _____                            By:  _____

Its:      C F O                                       Its:      President

RECEIVED
JAN    12 2015
EBMS - BILLINGS

## SCHEDULE B

## COBRA

The Plan Sponsor requests that the Contract Administrator provide certain services in compliance with the requirements of the Consolidated Budget Reconciliation Act (COBRA) as amended, and all related regulations with respect to the Plan Sponsor's COBRA responsibilities in consideration of the following:

## DUTIES AND RESPONSIBILITIES OF PLAN SPONSOR

A.  Notify the Contract Administrator in writing, of all Plan Members eligible under the Plan.

B.  Notify the Contract Administrator of certain qualifying events, in writing, within thirty (30) days of the occurrence of a qualifying event, including but not limited to a covered employee's end of employment, a covered employee's reduction of hours of employment, death of a covered employee, commencement of a proceeding in bankruptcy with respect to the employer, or the covered employee becoming entitled to Medicare benefits (under Part A, Part B, or both). Said Notice shall contain sufficient information to satisfy the requirements as set forth in the Act.

C.  Forward any necessary information and/or documentation on to Contract Administrator applicable to a Plan Participant and/or a Plan Beneficiary and a Qualifying Event.

D.  Assist Contract Administrator in obtaining any necessary information and/or documentation applicable to a Plan Participant and/or Plan Beneficiary.

E.  Notify Contract Administrator of any Plan Participant and/or Plan Beneficiary address change.

F.  If applicable, forward the necessary COBRA premium on to the Contract Administrator.

G.  Report any deficiencies or unmet requirements to the IRS on Form 4980(b).

H.  From time to time, additional notices may be required by federal or state law. Plan Sponsor is responsible for providing these additional notices. Contract Administrator will provide the notices for an additional fee to be determined.

## DUTIES AND RESPONSIBILITIES OF CONTRACT ADMINISTRATOR

A.  Upon receipt of complete eligibility documentation, Contract Administrator shall provide each Plan Participant and all applicable Plan Beneficiaries with written initial notice of his or her continuation coverage rights under the Plan.

B.  Following notice of a Qualifying Event, Contract Administrator will notify all Qualified Beneficiaries of continuation coverage rights and premium amounts.

C.  Contract Administrator shall receive elections and premiums from Qualified Beneficiaries, track all premium payments received, and provide telephonic assistance for inquiries on COBRA benefits.

D.  Contract Administrator shall notify Qualified Beneficiaries of rate changes, the unavailability of COBRA, and COBRA termination.

## COMPENSATION

███████████████████████████████████████████

Effective Date:  July 1, 2014

PLAN SPONSOR:                                    CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture, Inc.            Employee Benefit Management Services, Inc.
Steven Roberts Original Desserts, LLC.

By:                                              By:

Its:        CFO                                  Its:       President

JA Page 14 2015

EBMS - BILLINGS

## SCHEDULE C

## FIDUCIARY DISCLOSURE STATEMENT

A.     Prohibited Transaction Class Exemption 84-24 (PTE 84-24), as issued by the Department of Labor, permits the receipt of reasonable compensation by certain enumerated interested parties for services rendered if proper disclosure is given and the transaction is approved by appropriate independent Plan fiduciaries.  PTE 84-24 requires that the transaction be at arm's length and in the best interest of Plan participants.  This notice serves to satisfy the disclosure requirements of PTE 84-24, if applicable to Plan Sponsor.

      1.     Description of Transaction:
              Excess-loss Reinsurance Contract
              Life Insurance

      2.     Name of Insurer:
              Stop Loss Insurance Services, Inc.
              Lincoln Financial Group

      3.     __X__   The Contract Administrator is not affiliated with the Insurer whose contract is being recommended and is not limited by any agreement with the Insurer.

            ____   The Contract Administrator is affiliated with the Insurer whose contract is being recommended or is limited by an agreement with the Insurer.  Explain:

      4.     Sales Commission (expressed as a percentage of gross annual premiums).  If override commissions apply, explain below:

            0%

      5.     Description of any additional charges, fees, discounts, penalties or adjustment incurred by the Plan or which may be incurred by the Plan under the insurance company policy or contract.

      6.     Contract Administrator may receive additional compensation from the Insurer in the form of a production bonus, service fees, override commissions or a profit sharing arrangement.  Such compensation may be based upon Contract Administrator's potential volume of business with the Insurer, the overall profitability of the Insurer's business, or other similar factors.  The amount of such additional compensation, if any, will not be known until the end of the agreement period with the Insurer.  Information regarding such additional compensation, insofar as it relates to the Plan, will be available for the Plan fiduciaries' review after such amounts have been determined.

B.     Contract Administrator may receive interest from banks on account balances, and compensation from pharmaceutical manufacturers, health care providers, managed care service providers, PPOs, HMOs, large case negotiators, etc.  Such compensation may be based upon utilization of related products and services.  Contract Administrator will retain such compensation to the extent necessary to reasonably compensate Contract Administrator for its costs resulting from such utilization.  The amount of such additional compensation, if any, will be known only periodically.  Upon the Plan Sponsor's reasonable request, information regarding such additional compensation, insofar as it relates to the Plan, will be available for the Plan Sponsor's review after such amounts have been determined.

C.     The Contract Administrator will forward to the Plan Sponsor 100% of all rebates received from the Plan Sponsor's contracted PBM. Plan Sponsor acknowledges and agrees that in the event Plan Sponsor fails to timely fund any claim obligations, as set forth in the Agreement or the applicable PBM Agreement, Contract Administrator may, after written notice to the Plan Sponsor, withhold any and all rebates from Plan Sponsor and apply said rebates to the unfunded claims.

I hereby acknowledge that, in my capacity as an independent fiduciary with authority to act on behalf of the Plan, I have received the above information concerning the above transactions and I approve the transactions on behalf of the Plan. I am not an insurance agent or broker, pension consultant or insurance company involved in the transaction. Further, I will not receive any compensation or other consideration, directly or indirectly, for my own personal account from any party dealing with the Plan in connection with the transaction.

Effective Date:  July 1, 2014

PLAN SPONSOR:                                    CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture, Inc.            Employee Benefit Management Services, Inc.
Steven Roberts Original Desserts, LLC.

By:                                              By:

Its:          CFO                                Its:       President

JAN 1

EBMS - BILLINGS

## SCHEDULE E

## HIPAA SERVICES

The Contract Administrator will provide services with respect to the Plan Sponsor's responsibilities in compliance with the requirements of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended, and all related regulations in consideration of the following:

## DUTIES AND RESPONSIBILITIES OF PLAN SPONSOR

To ensure correct HIPAA Certificates of Creditable Coverage, Plan Sponsor shall submit, in a timely manner and in writing, complete and accurate employment, health and coverage data to Contract Administrator.

## DUTIES AND RESPONSIBILITIES OF CONTRACT ADMINISTRATOR

A.   Issue certificates of coverage to those who, based upon data provided by Plan Sponsor, lose coverage under the Plan.

B.   Issue certificates of coverage to those who elect COBRA, then cease to be covered by the COBRA continuation coverage provided by the Plan.

C.   Issue certificates of coverage to those who request such certificate, but no later than twenty-four (24) months after cessation of coverage as set forth in the preceding two paragraphs.

D.   Meet all HIPAA/HITECH Privacy, Security, and Administrative Simplification requirements that pertain to a Business Associate.

## COMPENSATION

A.   The Contract Administrator shall be authorized to deduct the administration fees for each month from the Plan Sponsor Account.

B.   The fee structure shall be renewed annually and revised to be mutually acceptable to both parties.

Effective Date:  July 1, 2014

PLAN SPONSOR:                                      CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture, Inc.              Employee Benefit Management Services, Inc.
Steven Roberts Original Desserts, LLC.

By:                                                By:

Its:        CFO                                    Its:      President

EBMS - BILLINGS

## SCHEDULE D
## CARELINK ADDENDUM

The Contract Administrator shall provide and Plan Sponsor shall pay for certain cost management services described in this Schedule D for the benefit of Plan's Sponsor's health benefit plan:

### A. UTILIZATION MANAGEMENT

**Inpatient:** Review actual or scheduled Admissions and, using clinical criteria, determine the medical necessity, conduct concurrent reviews and provide discharge planning, based upon the information provided to CARELINK, and provide certification, as appropriate.

**Outpatient:** Review actual or scheduled: (i) elective outpatient same-day surgeries; (ii) elective outpatient diagnostic procedures, including invasive; (iii) outpatient continuing services such as physical therapy, occupational therapy, speech therapy, home health care, hysterectomies, spinal surgeries, cancer treatments, dialysis, genetic testing, hospice, injectables and durable medical equipment (items in excess of $2,000.00).

   a.   PRE-ADMISSION COUNSELING

   Case Managers will provide telephonic counseling services to Covered Persons who have an inpatient, elective surgery and are not already enrolled in Case Management or Maternity Management. This service includes education on proper preparation for the hospital admission and recovery process and referral to other services, including Case Management when appropriate.  CARELINK must receive three business days advance notice of the scheduled admission.

   b.   POST-DISCHARGE COUNSELING

   Case Managers will provide telephonic counseling services to members after being discharged from the hospital to the home setting, excluding maternity cases, 23-hour observation Case Management cases and members already enrolled in Case Management. This service includes assessment of member's health status, review of post-discharge instructions and medication, education on signs and symptoms of adverse effects of the procedure, and referral to other services, including Case Management when appropriate.

### B. CASE MANAGEMENT

Case Management is a collaborative process to assess, plan, implement, coordinate, monitor and evaluate the options and services required to meet a Covered Person's health needs.  If Plan Sponsor or the reinsurance carrier request case management services outside of the parameters set out by the program, an additional hourly fee will be charged.

### C. MATERNITY MANAGEMENT

A review of maternity cases to assess the risk level in such cases, to perform specialized management services coordinating the delivery of prenatal health care services, to provide educational materials and counseling, to serve as a liaison between the Covered Person and Providers, to monitor and encourage the mother-to-be's compliance with appropriate prenatal health care.

### D. TELEDOC

Covered Persons are provided with unlimited 24/7 access to licensed physicians by phone, secure e-mail, video and mobile app.

### E. MISCELLANEOUS

Upon request of the Plan Sponsor, and as mutually agreed to by the parties, Contract Administrator will create customized reports and make changes to standard reports, correspondence, documents or other materials for an hourly charge.

Plan Sponsor acknowledges and agrees that neither Contract Administrator nor any external vendor that might perform the services outlined in Schedule D shall have no right, obligation, or liability to participate in the determination of what care or treatment is rendered to a Covered Person or how such care or treatment shall be rendered.   The decisions to obtain or deliver any health care service are solely between a Covered Person and his or her treating healthcare provider.

Effective Date: _July.1, 2014_____.

PLAN SPONSOR:                                      CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture, Inc.             Employee Benefit Management Services, Inc.
Steven Roberts Original Desserts, LLC.

By: _____               By: _____

Its: _____CFO_____               Its:    President

EBMS - BILLINGS

**SCHEDULE H**

**miBenefits**

Plan Sponsor desires to access employee/plan participant claim and eligibility information through miBenefits, the EBMS on-line portal.

Plan Sponsor agrees to hold all information that comes within its control strictly confidential, and provide all reasonable physical, electronic and procedural safeguards to prevent unauthorized disclosure of such information. Furthermore, Plan Sponsor agrees to comply with all applicable Federal and State laws and/or regulations regarding the security and confidentiality of such information including, but not limited to, any regulations, standards or rules propagated under the authority of the Gramm-Leach-Bliley Act and the Health Insurance Portability and Accountability Act of 1996 (HIPAA), HIPAA privacy and security and the Health Information and Technology Act (HITECH).

The Plan Sponsor agrees to hold harmless and indemnify the Contract Administrator against any expense, loss, lawsuit, settlement costs, penalty, damage, liability, claim or judgment, including reasonable attorneys' fees, arising out of, or resulting from Plan Sponsor's access to, disclosure and use of such information and/or failure to comply with the provisions of this schedule. These indemnifications shall survive the termination of this Agreement.

Contract Administrator is authorized to release a password enabling access, to:

LANA   PIERI   (name)          FRAN   ABRAGNA - HAYES
Director   Human   Recovres (title)    V. P.   Human   Resources
360   Espinosa   Rd   (mailing address)   2780   Tower   Road
Salinas   CA   93907          Avrora   CO   80011

LPIERI @ ROCKET FARMS .com (e-mail address)   FADRAGNA HAYES @ originaldesserts
                                                    . com

The following password configuration is being given:

    One password for all divisions/locations

Effective Date:  July 1, 2014

PLAN SPONSOR:                    CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture, Inc.    Employee Benefit Management Services, Inc.
Steven Roberts Original Desserts, LLC.

By: _____            By: _____

Its: _____ CFO _____            Its:   President


EBMS - BILLINGS

## SCHEDULE L

## THIRD PARTY RECOVERY

The Plan Sponsor requests that the Contract Administrator provide certain services in order to protect the assets of the Plan in the event any recovery is available from a third party source.

### DUTIES AND RESPONSIBILITIES OF PLAN SPONSOR

A.  The Plan Sponsor agrees that Contract Administrator shall provide third party recovery services to the Plan., Plan Sponsor agrees that it will furnish all information it may possess regarding claims subject to third party recovery.

B.  Certain cases will require referral to an outside attorney and additional legal work beyond the scope of the services contemplated by this Schedule. The Plan Sponsor agrees that engagement of an outside attorney shall be the Plan's responsibility and that upon engagement of such, the Contract Administrator shall cooperate with the outside attorney but will have no further obligation to pursue recovery.

C.  The Plan Administrator shall timely respond to settlement offers presented by Contract Administrator.

D.  The Plan Administrator shall have the right to terminate the pursuit and/or recovery efforts against a third party, the participant, or any other liable party at any time.

### DUTIES AND RESPONSIBILITIES OF CONTRACT ADMINISTRATOR

A.  The Contract Administrator shall provide third party recovery services necessary to pursue the Plan's equitable interests including the initial determination as to whether a third party action exists, supervision, follow-up and closure. If the Plan Sponsor does not agree to the course of recovery action proposed by the Contract Administrator, the Contract Administrator shall have no further obligation or liability whatsoever for the recovery and reimbursement of the Plan's equitable interests. Services such as filing an action in State or Federal Court are beyond the scope of the services contemplated by this Agreement.

B.  The Contract Administrator may engage such outside consultants and services as the Contract Administrator deems necessary to pursue the Plan's interests. Fees of such outside consultants and services shall not be the responsibility of the Plan, without its prior written consent.

C.  The Contract Administrator agrees to provide summary status reports of subrogation and third party recovery upon request of the Plan Sponsor.

D.  The Contract Administrator agrees that it shall have no authority to compromise the Plan's equitable interests in excess of Ten Thousand ($10,000) without consent of the Plan Sponsor.

E.  Plan Sponsor hereby grants Contract Administrator authority to accept settlement of the Plan's equitable interests for offers received between Two Thousand One ($2,001) and Ten Thousand ($10,000) Dollars without the Plan Sponsor's specific consent, if the settlement offer is more than or equal to sixty-six percent of the Plan's equitable interests. Offers less than sixty-six percent will be presented to the Plan Sponsor for its review.

F.  The Contract Administrator shall have no obligation to pursue the Plan's equitable interests between One ($1) and Two Thousand ($2,000) Dollars. If the Contract Administrator does pursue such an interest on the Plan's behalf, the Plan Sponsor agrees that the Contract Administrator shall have the authority to compromise the lien and accept settlement on the Plan's behalf.


EBMS - BILLINGS

**COMPENSATION**

██████████████████████████████████████████████

Effective Date:  July 1, 2014

PLAN SPONSOR:                                    CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture, Inc.            Employee Benefit Management Services, Inc.
Steven Roberts Original Desserts, I.L.C.

By:                                              By:

Its:        C F O                                Its:        President

**SCHEDULE P**

**HOLD HARMLESS AND INDEMNIFICATION AGREEMENT**
**STOP LOSS/ADVANCE FUNDING**

With the understanding that the Contract Administrator is relying upon the representations made by the Plan Sponsor in the Administrative Services Agreement and as set forth below in this Schedule, the Plan Sponsor hereby represents and warrants the following:

1.  Plan Sponsor is responsible for establishing and maintaining the Plan, complying with all applicable laws and regulations, and retains sole and final discretionary authority to manage and administrate the affairs of its Plan.

2.  Plan Sponsor shall procure stop-loss coverage at levels sufficient to ensure the financial viability of the Plan and shall monitor and maintain the funding at a level necessary to ensure prompt payment of all expenses eligible under the Plan.

3.  If the Plan Sponsor elects to utilize the advance funding feature of its stop-loss policy, the Plan Sponsor agrees to assume any and all liability resulting from the use of that advanced funding feature. Such liability may include, but is not limited to, the loss of a negotiated PPO discount amount, the loss of a negotiated case rate, and/or a violation of state or federal regulations regarding the time period for payment of claims.

4.  Plan Sponsor hereby indemnifies and holds harmless Contract Administrator, including its respective officers, employees and agents, from and against any and all expenses, losses, lawsuits, claims, settlement costs, penalties, damages, judgments, attorney's fees, actions or causes of action whatsoever to the extent that such results from the delay or denial in claims payment resulting from the stop-loss carrier's advance funding feature and/or in any way is connected with any act, failure to act, the performance of and/or failure to perform any and all obligations by or related to the stop-loss carrier and/or the advance funding feature utilized by the Plan Sponsor or its agent.

This Hold Harmless and Indemnification Agreement shall survive the termination of any applicable stop-loss policy and/or contract as well as the Administrative Services Agreement between the parties hereto.

Effective Date:  July 1, 2014

PLAN SPONSOR:                                         CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture, Inc.                 Employee Benefit Management Services, Inc.
Steven Roberts Original Desserts, LLC.

By:                                                   By:

Its:        CFO                                       Its:        President

EBMS - BILLINGS

# SCHEDULE A

## FEES

A.    In accordance with Section III of the Administrative Services Agreement, the Plan Sponsor agrees to pay to the Contract Administrator the following Administrative Fees:



B.    Plan Sponsor agrees to remit the following amounts to Contract Administrator or its designee for services performed by certain vendors on behalf of the Plan Sponsor or Plan. Unless noted otherwise in Section C below, Contract Administrator shall forward all amounts received to the appropriate vendor or vendor account.



C.    The Plan Sponsor acknowledges and agrees that the Contract Administrator may receive additional compensation in connection with services provided to Plan Sponsor from sources other than the Plan Sponsor or Plan. Contract Administrator may receive any of the following:

1. Wrap Networks:

The Contract Administrator contracts with wrap network arrangements for discounted pricing of non-network claims. If a wrap network is utilized on claims for Plan Sponsor, the Contract Administrator will retain a portion of the fee to offset administrative expenses including claims data analysis, EDI Routing and processing services.

2. Claims Negotiation Services:

The Contract Administrator contracts with certain entities to perform large claim negotiation services. If a large claim negotiation service is utilized on claims for Plan Sponsor's Plan, the Contract Administrator will retain a percentage of the total savings realized and paid by Plan Sponsor under Section B up to a maximum of 25%, for claims processing and coordination, and related communications with the provider, Plan participant and applicable carriers.

3. PBM Services and Audit Support:

The Contract Administrator contracts with PBM vendors to provide prescription drug benefits for Plan Sponsor's Plan. In conjunction with the services provided to Plan Sponsor by the PBM, Contract Administrator provides client support services, benefit design assistance, auditing services, data integration services, On line Health portal and decision support, PBM Contract Negotiation, PBM market check analysis, implementation and benefit setup transfer, member communication development, data files, plan consultation, appeals coordination, coordinated review of medical necessity in certain instances, issue resolution support and coordination, eligibility audits, real time/ same day updates to online health portal, and other related support services. For EBMS Preferred PBM vendors, the Contract Administrator receives funding directly from the PBM vendor for such service support.

D.      Plan Sponsor authorizes Contract Administrator to deduct the administrative fees for each month from the Plan Sponsor Account.  The Contract Administrator shall also be authorized to deduct any applicable taxes, fees, assessments and or penalties from the Plan Sponsor Account upon prior notice to the Plan Sponsor.

E.      A binder fee of N/A representing the first month's estimated fees shall be payable on or before the effective date of this Agreement.

F.      An initial one-time set-up fee of N/A for eligibility loading, plan building and other services, shall be payable prior to commencement of services under this agreement.

H.      Additional Administrative Fees may be reflected on the applicable Schedule.

I.      The fee and rates outlined in Schedule A shall be renewed and revised as necessary, but in no event less than annually to be mutually acceptable to both parties.

Effective Date:  July 1, 2015

PLAN SPONSOR:                              CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture, Inc./      Employee Benefit Management Services, Inc.
Steven Roberts Original Desserts, LLC.

By: _____               By: _____

Its: _____              Its:      President

## SCHEDULE B

## COBRA

The Plan Sponsor requests that the Contract Administrator provide certain services in compliance with the requirements of the Consolidated Budget Reconciliation Act (COBRA) as amended, and all related regulations with respect to the Plan Sponsor's COBRA responsibilities in consideration of the following:

## DUTIES AND RESPONSIBILITIES OF PLAN SPONSOR

A.  Notify the Contract Administrator in writing, of all Plan Members eligible under the Plan.

B.  Notify the Contract Administrator of certain qualifying events, in writing, within thirty (30) days of the occurrence of a qualifying event, including but not limited to a covered employee's end of employment, a covered employee's reduction of hours of employment, death of a covered employee, commencement of a proceeding in bankruptcy with respect to the employer, or the covered employee becoming entitled to Medicare benefits (under Part A, Part B, or both).  Said Notice shall contain sufficient information to satisfy the requirements as set forth in the Act.

C.  Forward any necessary information and/or documentation on to Contract Administrator applicable to a Plan Participant and/or a Plan Beneficiary and a Qualifying Event.

D.  Assist Contract Administrator in obtaining any necessary information and/or documentation applicable to a Plan Participant and/or Plan Beneficiary.

E.  Notify Contract Administrator of any Plan Participant and/or Plan Beneficiary address change.

F.  If applicable, forward the necessary COBRA premium on to the Contract Administrator.

G.  Report any deficiencies or unmet requirements to the IRS on Form 4980(b).

H.  From time to time, additional notices may be required by federal or state law.  Plan Sponsor is responsible for providing these additional notices.  Contract Administrator will provide the notices for an additional fee to be determined.

I.  Plan Sponsor shall indemnify Contract Administrator for errors made in manual eligibility updates to other vendors when Plan Sponsor has chosen manual over the electronic option.

## DUTIES AND RESPONSIBILITIES OF CONTRACT ADMINISTRATOR

A.  Upon receipt of complete eligibility documentation, Contract Administrator shall provide each Plan Participant and all applicable Plan Beneficiaries with written initial notice of his or her continuation coverage rights under the Plan.

B.  Following notice of a Qualifying Event, Contract Administrator will notify all Qualified Beneficiaries of continuation coverage rights and premium amounts.

C.  Contract Administrator shall receive elections and premiums from Qualified Beneficiaries, track all premium payments received, and provide telephonic assistance for inquiries on COBRA benefits.

D.  Contract Administrator shall notify Qualified Beneficiaries of rate changes, the unavailability of COBRA, and COBRA termination.

E.  If applicable, Contract Administrator shall transmit eligibility updates to designated vendors.

**COMPENSATION**

Effective Date:  July 1, 2015

PLAN SPONSOR:                              CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture,  Inc.      Employee Benefit Management Services, Inc.
Steven Roberts Original Desserts, LLC.

By: _____            By: _____

Its: _____           Its:     President

# SCHEDULE C

## FIDUCIARY DISCLOSURE STATEMENT

A.    Prohibited Transaction Class Exemption 84-24 (PTE 84-24), as issued by the Department of Labor, permits the receipt of reasonable compensation by certain enumerated interested parties for services rendered if proper disclosure is given and the transaction is approved by appropriate independent Plan fiduciaries. PTE 84-24 requires that the transaction be at arm's length and in the best interest of Plan participants. This notice serves to satisfy the disclosure requirements of PTE 84-24, if applicable to Plan Sponsor.

    1.    Description of Transaction:
        Excess-loss Reinsurance Contract
        Life Insurance

    2.    Name of Insurer:
        Optum Health - UHI
        Lincoln Financial Group

    3.    __X__    The Contract Administrator is not affiliated with the Insurer whose contract is being recommended and is not limited by any agreement with the Insurer.

        ___    The Contract Administrator is affiliated with the Insurer whose contract is being recommended or is limited by an agreement with the Insurer. Explain:

    4.    Sales Commission (expressed as a percentage of gross annual premiums). If override commissions apply, explain below:

        0%

    5.    Description of any additional charges, fees, discounts, penalties or adjustment incurred by the Plan or which may be incurred by the Plan under the insurance company policy or contract.

    6.    Contract Administrator may receive additional compensation from the Insurer in the form of a production bonus, service fees, override commissions or a profit sharing arrangement. Such compensation may be based upon Contract Administrator's potential volume of business with the Insurer, the overall profitability of the Insurer's business, or other similar factors. The amount of such additional compensation, if any, will not be known until the end of the agreement period with the Insurer. Information regarding such additional compensation, insofar as it relates to the Plan, will be available for the Plan fiduciaries' review after such amounts have been determined.

B.    Contract Administrator may receive interest from banks on account balances, and compensation from pharmaceutical manufacturers, health care providers, managed care service providers, PPOs, HMOs, large case negotiators, etc. Such compensation may be based upon utilization of related products and services. Contract Administrator will retain such compensation to the extent necessary to reasonably compensate Contract Administrator for its costs resulting from such utilization. The amount of such additional compensation, if any, will be known only periodically. Upon the Plan Sponsor's reasonable request, information regarding such additional compensation, insofar as it relates to the Plan, will be available for the Plan Sponsor's review after such amounts have been determined.

C.    The Contract Administrator will forward to the Plan Sponsor 100% of all rebates received from the Plan Sponsor's contracted PBM. Plan Sponsor acknowledges and agrees that in the event Plan Sponsor fails to timely fund any claim obligations, as set forth in the Agreement or the applicable PBM Agreement, Contract Administrator may, after written notice to the Plan Sponsor, withhold any and all rebates from Plan Sponsor and apply said rebates to the unfunded claims.

I hereby acknowledge that, in my capacity as an independent fiduciary with authority to act on behalf of the Plan, I have received the above information concerning the above transactions and I approve the transactions on behalf of the Plan. I am not an insurance agent or broker, pension consultant or insurance company involved in the transaction. Further, I will not receive any compensation or other consideration, directly or indirectly, for my own personal account from any party dealing with the Plan in connection with the transaction.

Effective Date:  July 1, 2015

PLAN SPONSOR:                                    CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture, Inc.            Employee Benefit Management Services, Inc.
Steven Roberts Original Desserts, LLC.

By:     _____                 By:     _____

Its:    _____                 Its:      President

## SCHEDULE D
## CARELINK ADDENDUM

The Contract Administrator shall provide and Plan Sponsor shall pay for certain cost management services described in this Schedule D for the benefit of Plan's Sponsor's health benefit plan:

### A. UTILIZATION MANAGEMENT

**Inpatient:** Review actual or scheduled Admissions and, using clinical criteria, determine the medical necessity, conduct concurrent reviews and provide discharge planning, based upon the information provided to CARELINK, and provide certification, as appropriate.

**Outpatient:** Review actual or scheduled: (i) elective outpatient same-day surgeries; (ii) elective outpatient diagnostic procedures, including invasive; (iii) outpatient continuing services such as physical therapy, occupational therapy, speech therapy, home health care, hysterectomies, spinal surgeries, cancer treatments, dialysis, genetic testing, hospice, injectables and durable medical equipment (items in excess of $2,000.00).

   a. PRE-ADMISSION COUNSELING

   Case Managers will provide telephonic counseling services to Covered Persons who have an inpatient, elective surgery and are not already enrolled in Case Management or Maternity Management. This service includes education on proper preparation for the hospital admission and recovery process and referral to other services, including Case Management when appropriate.  CARELINK must receive three business days advance notice of the scheduled admission.

   b. POST-DISCHARGE COUNSELING

   Case Managers will provide telephonic counseling services to members after being discharged from the hospital to the home setting, excluding maternity cases, 23-hour observation Case Management cases and members already enrolled in Case Management. This service includes assessment of member's health status, review of post-discharge instructions and medication, education on signs and symptoms of adverse effects of the procedure, and referral to other services, including Case Management when appropriate.

### B. CASE MANAGEMENT

Case Management is a collaborative process to assess, plan, implement, coordinate, monitor and evaluate the options and services required to meet a Covered Person's health needs.  If Plan Sponsor or the reinsurance carrier request case management services outside of the parameters set out by the program, an additional hourly fee will be charged.

### C. MATERNITY MANAGEMENT

A review of maternity cases to assess the risk level in such cases, to perform specialized management services coordinating the delivery of prenatal health care services, to provide educational materials and counseling, to serve as a liaison between the Covered Person and Providers, to monitor and encourage the mother-to-be's compliance with appropriate prenatal health care.

### D. TELEDOC

Covered Persons are provided with unlimited 24/7 access to licensed physicians by phone, secure e-mail, video and mobile app.

### E. MISCELLANEOUS

Upon request of the Plan Sponsor, and as mutually agreed to by the parties, Contract Administrator will create customized reports and make changes to standard reports, correspondence, documents or other materials for an hourly charge.

Plan Sponsor acknowledges and agrees that neither Contract Administrator nor any external vendor that might perform the services outlined in Schedule D shall have no right, obligation, or liability to participate in the determination of what care or treatment is rendered to a Covered Person or how such care or treatment shall be rendered.   The decisions to obtain or deliver any health care service are solely between a Covered Person and his or her treating healthcare provider.

Effective Date:  July 1, 2015

PLAN SPONSOR:                                      CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture,  Inc.             Employee Benefit Management Services, Inc.
Steven Roberts Original Desserts, LLC.

By:  _____                         By:  _____

Its:  _____                        Its:      President

## SCHEDULE L

## THIRD PARTY RECOVERY

The Plan Sponsor requests that the Contract Administrator provide certain services in order to protect the assets of the Plan in the event any recovery is available from a third party source.

### DUTIES AND RESPONSIBILITIES OF PLAN SPONSOR

A.  The Plan Sponsor agrees that Contract Administrator shall provide third party recovery services to the Plan. Plan Sponsor agrees that it will furnish all information it may possess regarding claims subject to third party recovery.

B.  Certain cases will require referral to an outside attorney and additional legal work beyond the scope of the services contemplated by this Schedule. The Plan Sponsor agrees that engagement of an outside attorney shall be the Plan's responsibility and that upon engagement of such, the Contract Administrator shall cooperate with the outside attorney but will have no further obligation to pursue recovery.

C.  The Plan Administrator shall timely respond to settlement offers presented by Contract Administrator.

D.  The Plan Administrator shall have the right to terminate the pursuit and/or recovery efforts against a third party, the participant, or any other liable party at any time.

### DUTIES AND RESPONSIBILITIES OF CONTRACT ADMINISTRATOR

A.  The Contract Administrator shall provide third party recovery services necessary to pursue the Plan's equitable interests including the initial determination as to whether a third party action exists, supervision, follow-up and closure. If the Plan Sponsor does not agree to the course of recovery action proposed by the Contract Administrator, the Contract Administrator shall have no further obligation or liability whatsoever for the recovery and reimbursement of the Plan's equitable interests. Services such as filing an action in State or Federal Court are beyond the scope of the services contemplated by this Agreement.

B.  The Contract Administrator may engage such outside consultants and services as the Contract Administrator deems necessary to pursue the Plan's interests. Fees of such outside consultants and services shall not be the responsibility of the Plan, without its prior written consent.

C.  The Contract Administrator agrees to provide summary status reports of subrogation and third party recovery upon request of the Plan Sponsor.

D.  The Contract Administrator agrees that it shall have no authority to compromise the Plan's equitable interests in excess of Ten Thousand ($10,000) without consent of the Plan Sponsor.

E.  Plan Sponsor hereby grants Contract Administrator authority to accept settlement of the Plan's equitable interests for offers received between Two Thousand One ($2,001) and Ten Thousand ($10,000) Dollars without the Plan Sponsor's specific consent, if the settlement offer is more than or equal to sixty-six percent of the Plan's equitable interests. Offers less than sixty-six percent will be presented to the Plan Sponsor for its review.

F.  The Contract Administrator shall have no obligation to pursue the Plan's equitable interests between One ($1) and Two Thousand ($2,000) Dollars. If the Contract Administrator does pursue such an interest on the Plan's behalf, the Plan Sponsor agrees that the Contract Administrator shall have the authority to compromise the lien and accept settlement on the Plan's behalf.

**COMPENSATION**

███████████████████████████████████████████████

Effective Date:  July 1, 2015

PLAN SPONSOR:                              CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture,  Inc.     Employee Benefit Management Services, Inc.
Steven Roberts Original Desserts, LLC.

By:       _____          By:       _____

Its:      _____          Its:      President

## SCHEDULE P

## HOLD HARMLESS AND INDEMNIFICATION AGREEMENT
## STOP LOSS/ADVANCE FUNDING

With the understanding that the Contract Administrator is relying upon the representations made by the Plan Sponsor in the Administrative Services Agreement and as set forth below in this Schedule, the Plan Sponsor hereby represents and warrants the following:

1.  Plan Sponsor is responsible for establishing and maintaining the Plan, complying with all applicable laws and regulations, and retains sole and final discretionary authority to manage and administrate the affairs of its Plan.

2.  Plan Sponsor shall procure stop-loss coverage at levels sufficient to ensure the financial viability of the Plan and shall monitor and maintain the funding at a level necessary to ensure prompt payment of all expenses eligible under the Plan.

3.  If the Plan Sponsor elects to utilize the advance funding feature of its stop-loss policy, the Plan Sponsor agrees to assume any and all liability resulting from the use of that advanced funding feature. Such liability may include, but is not limited to, the loss of a negotiated PPO discount amount, the loss of a negotiated case rate, and/or a violation of state or federal regulations regarding the time period for payment of claims.

4.  Plan Sponsor hereby indemnifies and holds harmless Contract Administrator, including its respective officers, employees and agents, from and against any and all expenses, losses, lawsuits, claims, settlement costs, penalties, damages, judgments, attorney's fees, actions or causes of action whatsoever to the extent that such results from the delay or denial in claims payment resulting from the stop-loss carrier's advance funding feature and/or in any way is connected with any act, failure to act, the performance of and/or failure to perform any and all obligations by or related to the stop-loss carrier and/or the advance funding feature utilized by the Plan Sponsor or its agent.

This Hold Harmless and Indemnification Agreement shall survive the termination of any applicable stop-loss policy and/or contract as well as the Administrative Services Agreement between the parties hereto.

Effective Date:  July 1, 2015

PLAN SPONSOR:                                    CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture,  Inc.           Employee Benefit Management Services, Inc.
Steven Roberts Original Desserts, LLC.

By:  _____                       By:  _____

Its:  _____                      Its:      President

**SCHEDULE A**

**FEES**

A.    In accordance with Section III of the Administrative Services Agreement, the Plan Sponsor agrees to pay to the Contract Administrator the following Administrative Fees:



B.    Plan Sponsor agrees to remit the following amounts to Contract Administrator or its designee for services performed by certain vendors on behalf of the Plan Sponsor or Plan. Unless noted otherwise in Section C below, Contract Administrator shall forward all amounts received to the appropriate vendor or vendor account.



C.    The Plan Sponsor acknowledges and agrees that the Contract Administrator may receive additional compensation in connection with services provided to Plan Sponsor from sources other than the Plan Sponsor or Plan. Contract Administrator may receive any of the following:

1. Wrap Networks:

The Contract Administrator contracts with wrap network arrangements for discounted pricing of non-network claims. If a wrap network is utilized on claims for Plan Sponsor, the Contract Administrator will retain a portion of the fee to offset administrative expenses including claims data analysis, EDI Routing and processing services.

2. Claims Negotiation Services:

The Contract Administrator contracts with certain entities to perform large claim negotiation services, or will provide those same services through Contract Administrator's staff. If a large claim negotiation service is utilized on claims for Plan Sponsor's Plan, the Contract Administrator will retain a portion of the Claims Negotiation Services fee paid by Plan Sponsor and described in Section B for claims processing and coordination, and related communications with the provider, Plan participant and applicable carriers. If Contract Administrator does not utilize an outside vendor to perform the negotiation, Contract Administrator shall retain the full Claims Negotiation Services fee as described in Section B.

3. PBM Services and Audit Support:

The Contract Administrator contracts with PBM vendors to provide prescription drug benefits for Plan Sponsor's Plan. In conjunction with the services provided to Plan Sponsor by the PBM, Contract Administrator provides client support services, benefit design assistance, auditing services, data integration services, On line Health portal and decision support, PBM Contract Negotiation, PBM market check analysis, implementation and benefit setup transfer, member communication development, data files, plan consultation, appeals coordination, coordinated review of medical necessity in certain instances, issue resolution support and coordination, eligibility audits, real time/ same day updates to online health portal, and other related support services. For EBMS Preferred PBM vendors, the Contract Administrator receives funding directly from the PBM vendor for such service support.

D.   Plan Sponsor authorizes Contract Administrator to deduct the administrative fees for each month from the Plan Sponsor Account.  The Contract Administrator shall also be authorized to deduct any applicable taxes, fees, assessments and or penalties from the Plan Sponsor Account upon prior notice to the Plan Sponsor.

E.   A binder fee of $  N/A    representing the first month's estimated fees shall be payable on or before the effective date of this Agreement.

F.   An initial one-time set-up fee of $  N/A    for eligibility loading, plan building and other services, shall be payable prior to commencement of services under this agreement.

H.   Additional Administrative Fees may be reflected on the applicable Schedule.

I.   The fee and rates outlined in Schedule A shall be renewed and revised as necessary, but in no event less than annually to be mutually acceptable to both parties.

Effective Date:  July 1, 2016

PLAN SPONSOR:                                   CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture, Inc. / Steven Roberts        Employee Benefit Management Services, Inc.
Original Desserts, LLC

By:                                             By:

Its:   HR Director                              Its:    President

## SCHEDULE B

## COBRA

The Plan Sponsor requests that the Contract Administrator provide certain services in compliance with the requirements of the Consolidated Budget Reconciliation Act (COBRA) as amended, and all related regulations with respect to the Plan Sponsor's COBRA responsibilities in consideration of the following:

## DUTIES AND RESPONSIBILITIES OF PLAN SPONSOR

    A.  Notify the Contract Administrator in writing, of all Plan Members eligible under the Plan.

    B.  Notify the Contract Administrator of certain qualifying events, in writing, within thirty (30) days of the occurrence of a qualifying event, including but not limited to a covered employee's end of employment, a covered employee's reduction of hours of employment, death of a covered employee, commencement of a proceeding in bankruptcy with respect to the employer, or the covered employee becoming entitled to Medicare benefits (under Part A, Part B, or both). Said Notice shall contain sufficient information to satisfy the requirements as set forth in the Act.

    C.  Forward any necessary information and/or documentation on to Contract Administrator applicable to a Plan Participant and/or a Plan Beneficiary and a Qualifying Event.

    D.  Assist Contract Administrator in obtaining any necessary information and/or documentation applicable to a Plan Participant and/or Plan Beneficiary.

    E.  Notify Contract Administrator of any Plan Participant and/or Plan Beneficiary address change.

    F.  If applicable, forward the necessary COBRA premium on to the Contract Administrator.

    G.  Report any deficiencies or unmet requirements to the IRS on Form 4980(b).

    H.  From time to time, additional notices may be required by federal or state law. Plan Sponsor is responsible for providing these additional notices. Contract Administrator will provide the notices for an additional fee to be determined.

    I.  Plan Sponsor shall indemnify Contract Administrator for errors made in manual eligibility updates to other vendors when Plan Sponsor has chosen manual over the electronic option.

## DUTIES AND RESPONSIBILITIES OF CONTRACT ADMINISTRATOR

    A.  Upon receipt of complete eligibility documentation, Contract Administrator shall provide each Plan Participant and all applicable Plan Beneficiaries with written initial notice of his or her continuation coverage rights under the Plan.

    B.  Following notice of a Qualifying Event, Contract Administrator will notify all Qualified Beneficiaries of continuation coverage rights and premium amounts.

    C.  Contract Administrator shall receive elections and premiums from Qualified Beneficiaries, track all premium payments received, and provide telephonic assistance for inquiries on COBRA benefits.

    D.  Contract Administrator shall notify Qualified Beneficiaries of rate changes, the unavailability of COBRA, and COBRA termination.

    E.  If applicable, Contract Administrator shall transmit eligibility updates to designated vendors.

## COMPENSATION

    A.  Contract Administrator shall retain 2% of the applicable premium of those who elect and pay COBRA.

    B.  Contract Administrator shall be authorized to deduct the administration fees for each month from the Plan Sponsor Account.

C.   A binder fee of $ N/A   representing the first month's estimated fees shall be payable on or before the effective date of this Agreement.

D.   The fee structure shall be renewed annually and revised to be mutually acceptable to both parties.

Effective Date:  July 1, 2016

PLAN SPONSOR:                                                CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture, Inc. / Steven Roberts       Employee Benefit Management Services, Inc.
Original Desserts, LLC

By:  _____                                By:  _____

Its:  _____                               Its:       President

## SCHEDULE C

## FIDUCIARY DISCLOSURE STATEMENT

A.   Prohibited Transaction Class Exemption 84-24 (PTE 84-24), as issued by the Department of Labor, permits the receipt of reasonable compensation by certain enumerated interested parties for services rendered if proper disclosure is given and the transaction is approved by appropriate independent Plan fiduciaries. PTE 84-24 requires that the transaction be at arm's length and in the best interest of Plan participants. This notice serves to satisfy the disclosure requirements of PTE 84-24, if applicable to Plan Sponsor.

   1.   <u>Excess-loss Reinsurance Contract</u>
        <u>Life Insurance</u>

   2.   Name of Insurer:
        <u>Optum Health - UHI</u>
        <u>Lincoln Financial Group</u>

   3.   __X__   The Contract Administrator is not affiliated with the Insurer whose contract is being recommended and is not limited by any agreement with the Insurer.

        _____   The Contract Administrator is affiliated with the Insurer whose contract is being recommended or is limited by an agreement with the Insurer. Explain:

   4.   Sales Commission (expressed as a percentage of gross annual premiums). If override commissions apply, explain below:

        0%

   5.   Description of any additional charges, fees, discounts, penalties or adjustment incurred by the Plan or which may be incurred by the Plan under the insurance company policy or contract.

   6.   Contract Administrator may receive additional compensation from the Insurer in the form of a production bonus, service fees, override commissions or a profit sharing arrangement. Such compensation may be based upon Contract Administrator's potential volume of business with the Insurer, the overall profitability of the Insurer's business, or other similar factors. The amount of such additional compensation, if any, will not be known until the end of the agreement period with the Insurer. Information regarding such additional compensation, insofar as it relates to the Plan, will be available for the Plan fiduciaries' review after such amounts have been determined.

B.   Contract Administrator may receive compensation from pharmaceutical manufacturers, health care providers, managed care service providers, PPOs, HMOs, large case negotiators, etc. Such compensation may be based upon utilization of related products and services. Contract Administrator will retain such compensation to the extent necessary to reasonably compensate Contract Administrator for its costs resulting from such utilization. The amount of such additional compensation, if any, will be known only periodically. Upon the Plan Sponsor's reasonable request, information regarding such additional compensation, insofar as it relates to the Plan, will be available for the Plan Sponsor's review after such amounts have been determined.

C.   The Contract Administrator will forward to the Plan Sponsor 100% of all rebates received from the Plan Sponsor's contracted PBM. Plan Sponsor acknowledges and agrees that in the event Plan Sponsor fails to timely fund any claim obligations, as set forth in the Agreement or the applicable PBM Agreement, Contract Administrator may, after written notice to the Plan Sponsor, withhold any and all rebates from Plan Sponsor and apply said rebates to the unfunded claims.

D.   Contract Administrator utilizes non-interest bearing bank accounts as claims paying accounts and does not earn any compensation on balances that may exist in such accounts.

E.   Contract Administrator may use a bank purchase card or credit card as a means to advance payment on the Plan Sponsor's behalf to a healthcare provider for services provided to an enrolled Plan Participant. Contract Administrator may utilize this payment mechanism to secure a more favorable discount on a claim or to satisfy a prompt pay requirement. Plan Sponsor acknowledges that these bank purchase cards or credit cards may offer certain benefits to the cardholder for use of the card (i.e. cash back or airline mileage) and that Contract Administrator will retain these benefits to offset fees and costs associated with the use of these cards.

F.   Contract Administrator utilizes outside vendors to provide electronic payment services for claims payment. If a vendor retains a portion of the merchant processing fees or electronic payment fees paid by the provider to offset the vendor's costs associated with the transaction, Contract Administrator may receive a portion of such retained fees up to a maximum of 45% for administrative support services.

I hereby acknowledge that, in my capacity as an independent fiduciary with authority to act on behalf of the Plan, I have received the above information concerning the above transactions and I approve the transactions on behalf of the Plan. I am not an insurance agent or broker, pension consultant or insurance company involved in the transaction. Further, I will not receive any compensation or other consideration, directly or indirectly, for my own personal account from any party dealing with the Plan in connection with the transaction.

Effective Date:  July 1, 2016

PLAN SPONSOR:

Monterey Peninsula Horticulture, Inc. / Steven Roberts
Original Desserts, LLC

By: _____

Its: _____

CONTRACT ADMINISTRATOR:

Employee Benefit Management Services, Inc.

By: _____

Its:   President

## SCHEDULE D
## CARELINK ADDENDUM

The Contract Administrator shall provide and Plan Sponsor shall pay for certain cost management services described in this Schedule D for the benefit of Plan's Sponsor's health benefit plan:

### A. UTILIZATION MANAGEMENT

**Inpatient:** Review actual or scheduled Admissions and, using clinical criteria, determine the medical necessity, conduct concurrent reviews and provide discharge planning, based upon the information provided to CARELINK, and provide certification, as appropriate.

**Outpatient:** Review actual or scheduled: (i) elective outpatient same-day surgeries; (ii) elective outpatient diagnostic procedures, including invasive; (iii) outpatient continuing services such as physical therapy, occupational therapy, speech therapy, home health care, hysterectomies, spinal surgeries, cancer treatments, dialysis, genetic testing, hospice, injectables and durable medical equipment (items in excess of $2,000.00).

    a. PRE-ADMISSION COUNSELING

        Case Managers will provide telephonic counseling services to Covered Persons who have an inpatient, elective surgery and are not already enrolled in Case Management or Maternity Management. This service includes education on proper preparation for the hospital admission and recovery process and referral to other services, including Case Management when appropriate. CARELINK must receive three business days advance notice of the scheduled admission.

    b. POST-DISCHARGE COUNSELING

        Case Managers will provide telephonic counseling services to members after being discharged from the hospital to the home setting, excluding maternity cases, 23-hour observation Case Management cases and members already enrolled in Case Management. This service includes assessment of member's health status, review of post-discharge instructions and medication, education on signs and symptoms of adverse effects of the procedure, and referral to other services, including Case Management when appropriate.

### B. CASE MANAGEMENT

Case Management is a collaborative process to assess, plan, implement, coordinate, monitor and evaluate the options and services required to meet a Covered Person's health needs. If Plan Sponsor or the reinsurance carrier request case management services outside of the parameters set out by the program, an additional hourly fee will be charged.

### C. MATERNITY MANAGEMENT

A review of maternity cases to assess the risk level in such cases, to perform specialized management services coordinating the delivery of prenatal health care services, to provide educational materials and counseling, to serve as a liaison between the Covered Person and Providers, to monitor and encourage the mother-to-be's compliance with appropriate prenatal health care.

### D. TELEDOC

Covered Persons are provided with unlimited 24/7 access to licensed physicians by phone, secure e-mail, video and mobile app.

### E. MISCELLANEOUS

Upon request of the Plan Sponsor, and as mutually agreed to by the parties, Contract Administrator will create customized reports and make changes to standard reports, correspondence, documents or other materials for an hourly charge.

Plan Sponsor acknowledges and agrees that neither Contract Administrator nor any external vendor that might perform the services outlined in Schedule D shall have no right, obligation, or liability to participate in the determination of what care or treatment is rendered to a Covered Person or how such care or treatment shall be rendered. The decisions to obtain or deliver any health care service are solely between a Covered Person and his or her treating healthcare provider.

Effective Date:  July 1, 2016

PLAN SPONSOR:                                          CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture, Inc. / Steven Roberts        Employee Benefit Management Services, Inc.
Original Desserts, LLC

By:    _____                        By:    _____

Its:   _____                        Its:      President

SCHEDULE K

CAFETERIA PLANS

The Plan Sponsor requests that the Contract Administrator provide certain services in order to allow employees to select among cash compensation and certain non-taxable benefits, namely coverage under one or more benefits programs maintained by Plan Sponsor.  Plan Sponsor intends that the Plan qualify as a cafeteria plan under Section 125 and 129 of the Code and that the benefits provided under the Plan be eligible for exclusion from Federal income tax.

## DUTIES AND RESPONSIBILITIES OF PLAN SPONSOR

A.      Plan Sponsor shall establish separate Benefits Accounts based on the elections made by each employee.  Contributions shall be credited to the proper Benefits Accounts of each employee.

B.      Plan Sponsor shall provide to the Contract Administrator any employment records of any employee and dependent eligible to participate under the Plan.  Such records shall include any information the Contract Administrator may need for the proper administration of the Plan.

C.      Plan Sponsor shall have a Plan Document and Summary Plan Description to describe the benefits available to the employees.

D.      Plan Sponsor shall be responsible for all required reporting or disclosure requirements to the IRS, employees, or any other entity as required by applicable law, including but not limited to the Form 5500.

E.      Plan Sponsor shall be solely responsible for the use of employee salary reduction contributions in a manner consistent with applicable IRS and Treasury regulatory guidance, including forfeitures.

F.      Plan Sponsor shall be responsible for any non-discrimination testing required for the Plan.

## DUTIES AND RESPONSIBILITIES OF CONTRACT ADMINISTRATOR

A.      Contract Administrator shall process claims received from Participants of the Plan pursuant to the appropriate Plan Document.

B.      Contract Administrator shall respond to inquiries from Participants or employers.

C.      Contract Administrator shall adopt and apply rules or procedures to insure the orderly and efficient administration of the Plan.  Contract Administrator shall use its best efforts to ensure such rules or procedures comply with applicable Internal Revenue Code, or IRS and/or Treasury published guidance and technical bulletins, and industry standard interpretations of such guidance.

D.      Contract Administrator shall provide Plan Sponsor with information it may require in connection with the Plan.

E.      Contract Administrator shall report to the Plan Sponsor, or any party designated by the Plan Sponsor, after the end of each Plan year regarding the administration of the Plan, and to report any significant problems as to the administration of the Plan and to make recommendations for modifications as to procedures and benefits, or any other change which might insure the efficient administration of the Plan.

F.      Contract Administrator shall perform its duties in a reasonable manner, consistent with applicable law and industry standard interpretations of published guidance, on a non-discriminatory basis and shall apply uniform rules to all Participants similarly situated under the Plan.

G.      Contract Administrator shall provide COBRA Continuation Coverage, if applicable, for eligible employees and dependents and shall advise said Participants of the terms and conditions of such continuation coverage.

H.      Contract Administrator shall provide a debit card to Plan Participants through an authorized vendor.

**COMPENSATION**



Effective Date:  July 1, 2016

PLAN SPONSOR:

Monterey Peninsula Horticulture, Inc. / Steven Roberts
Original Desserts, LLC

By: _____

Its: _____

CONTRACT ADMINISTRATOR:

Employee Benefit Management Services, Inc.

By: _____

Its:     President

# SCHEDULE L

# THIRD PARTY RECOVERY

The Plan Sponsor requests that the Contract Administrator provide certain services in order to protect the assets of the Plan in the event any recovery is available from a third party source.

## DUTIES AND RESPONSIBILITIES OF PLAN SPONSOR

A. The Plan Sponsor agrees that Contract Administrator shall provide third party recovery services to the Plan. Plan Sponsor agrees that it will furnish all information it may possess regarding claims subject to third party recovery.

B. Certain cases will require referral to an outside attorney and additional legal work beyond the scope of the services contemplated by this Schedule. The Plan Sponsor agrees that engagement of an outside attorney shall be the Plan's responsibility and that upon engagement of such, the Contract Administrator shall cooperate with the outside attorney but will have no further obligation to pursue recovery.

C. The Plan Administrator shall timely respond to settlement offers presented by Contract Administrator.

D. The Plan Administrator shall have the right to terminate the pursuit and/or recovery efforts against a third party, the participant, or any other liable party at any time.

## DUTIES AND RESPONSIBILITIES OF CONTRACT ADMINISTRATOR

A. The Contract Administrator shall provide third party recovery services necessary to pursue the Plan's equitable interests including the initial determination as to whether a third party action exists, supervision, follow-up and closure. If the Plan Sponsor does not agree to the course of recovery action proposed by the Contract Administrator, the Contract Administrator shall have no further obligation or liability whatsoever for the recovery and reimbursement of the Plan's equitable interests. Services such as filing an action in State or Federal Court are beyond the scope of the services contemplated by this Agreement.

B. The Contract Administrator may engage such outside consultants and services as the Contract Administrator deems necessary to pursue the Plan's interests. Fees of such outside consultants and services shall not be the responsibility of the Plan, without its prior written consent.

C. The Contract Administrator agrees to provide summary status reports of subrogation and third party recovery upon request of the Plan Sponsor.

D. The Contract Administrator agrees that it shall have no authority to compromise the Plan's equitable interests in excess of Ten Thousand ($10,000) without consent of the Plan Sponsor.

E. Plan Sponsor hereby grants Contract Administrator authority to accept settlement of the Plan's equitable interests for offers received between Two Thousand One ($2,001) and Ten Thousand ($10,000) Dollars without the Plan Sponsor's specific consent, if the settlement offer is more than or equal to sixty-six percent of the Plan's equitable interests. Offers less than sixty-six percent will be presented to the Plan Sponsor for its review.

F. The Contract Administrator shall have no obligation to pursue the Plan's equitable interests between One ($1) and Two Thousand ($2,000) Dollars. If the Contract Administrator does pursue such an interest on the Plan's behalf, the Plan Sponsor agrees that the Contract Administrator shall have the authority to compromise the lien and accept settlement on the Plan's behalf.

**COMPENSATION**

███████████████████████████████████████████

Effective Date:  July 1, 2016

PLAN SPONSOR:                                    CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture, Inc. / Steven Roberts        Employee Benefit Management Services, Inc.
Original Desserts/LLC

By: _____                        By: _____

Its: _____                       Its:    President

**SCHEDULE P**

**HOLD HARMLESS AND INDEMNIFICATION AGREEMENT
STOP LOSS/ADVANCE FUNDING**

With the understanding that the Contract Administrator is relying upon the representations made by the Plan Sponsor in the Administrative Services Agreement and as set forth below in this Schedule, the Plan Sponsor hereby represents and warrants the following:

1.  Plan Sponsor is responsible for establishing and maintaining the Plan, complying with all applicable laws and regulations, and retains sole and final discretionary authority to manage and administrate the affairs of its Plan.

2.  Plan Sponsor shall procure stop-loss coverage at levels sufficient to ensure the financial viability of the Plan and shall monitor and maintain the funding at a level necessary to ensure prompt payment of all expenses eligible under the Plan.

3.  If the Plan Sponsor elects to utilize the advance funding feature of its stop-loss policy, the Plan Sponsor agrees to assume any and all liability resulting from the use of that advanced funding feature. Such liability may include, but is not limited to, the loss of a negotiated PPO discount amount, the loss of a negotiated case rate, and/or a violation of state or federal regulations regarding the time period for payment of claims.

4.  Plan Sponsor hereby indemnifies and holds harmless Contract Administrator, including its respective officers, employees and agents, from and against any and all expenses, losses, lawsuits, claims, settlement costs, penalties, damages, judgments, attorney's fees, actions or causes of action whatsoever to the extent that such results from the delay or denial in claims payment resulting from the stop-loss carrier's advance funding feature and/or in any way is connected with any act, failure to act, the performance of and/or failure to perform any and all obligations by or related to the stop-loss carrier and/or the advance funding feature utilized by the Plan Sponsor or its agent.

This Hold Harmless and Indemnification Agreement shall survive the termination of any applicable stop-loss policy and/or contract as well as the Administrative Services Agreement between the parties hereto.

Effective Date: __July 1, 2016__

PLAN SPONSOR:                                          CONTRACT ADMINISTRATOR:

Monterey Peninsula Horticulture, Inc. / Steven Roberts     Employee Benefit Management Services, Inc.
Original Desserts, LLC

By: _____                              By: _____

Its: _____                             Its:      President

1

## CERTIFICATE OF SERVICE

2

3

    I certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system on February 22, 2019.

4

5

6

7

Dated: February 22, 2019          /s/ Bernard Given
                                Bernard Given

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

17408088.1
231426-10003

3

DECLARATION OF J. MATTHEW JOHNSON IN SUPPORT OF
MOTION TO DISMISS